[No. C013153. Third Dist. Mar. 25, 1993.]

ERNEST CARLETON, Plaintiff and Appellant, v.
MARY TORTOSA, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

DeRonde & DeRonde and John A. DeRonde, Jr., for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney and Mark E. Ellis for Defendant and Respondent.

## OPINION

**SCOTLAND, J.**—This case presents the question whether a real estate broker had a duty to advise her client that the client's real estate transactions could have adverse tax consequences.

Plaintiff Ernest Carleton, an experienced real estate investor, employed defendant Mary Tortosa, a real estate broker, in the sale of two residential rental properties and the purchase of two residential rental properties. Plaintiff executed listing agreements, real estate disclosure statements, and real estate purchase contracts which advised him that defendant's responsibilities as a broker did not include giving advice on tax consequences of the transactions. After the transactions were completed, plaintiff was informed

by his accountant that plaintiff incurred a tax liability of approximately $34,000 because the transactions were not structured to qualify as tax-deferred exchanges under Internal Revenue Code section 1031. (26 U.S.C. § 1031; hereafter section 1031.)

Plaintiff then brought this professional negligence action, alleging in substance that defendant "failed to exercise reasonable care and skill in undertaking her duties as a broker" by neglecting to warn plaintiff his transactions could have adverse tax consequences and by failing to structure the transactions as tax-deferred exchanges.

Defendant filed a motion for summary judgment on the ground "plaintiff cannot establish duty or breach of duty as a matter of law." The trial court granted the motion, ruling: "Defendant Tortosa was in a fiduciary relationship with plaintiff. This relationship was defined by the documents [executed by plaintiff]. . . . [¶] These documents evidence the nature of the fiduciary relationship between defendant and plaintiff [which] did not include a separate responsibility on the part of defendant to advise plaintiff Earnest [*sic*] Carleton on tax matters, but rather, specifically excluded the provision of tax advice from the scope of defendant Tortosa's duty to plaintiff. Plaintiff Carleton was specifically instructed to look to other professionals for tax advice. Thus, defendant Tortosa had no affirmative duty to provide tax advice to plaintiff Carleton or to structure the escrows of the subject transactions in such a way as to reap the greatest tax benefits to him. Such advice is strictly outside the scope of a real estate agent's fiduciary duty to her client."

Plaintiff appeals from the order and judgment. He claims a real estate broker's duty to exercise reasonable skill and care for the benefit of the client extends to advising the client that a transaction could have adverse tax consequences and recognizing the need for a tax-deferred exchange. According to plaintiff, the use of " 'boilerplate' disclaimers" in the listing agreements, disclosure forms and purchase contracts stating a real estate broker is not responsible for giving tax advice did not relieve defendant of the duty to warn plaintiff that his proposed transactions were in the nature of "an IRC 1031 Delayed Exchange and [to advise plaintiff] to secure the assistance of outside professionals in the event that [defendant] could not competently handle the transaction." (Italics omitted.) This is so, he argues, because any contractual provision relieving a real estate broker of the duty to recognize and alert a client to potential tax consequences of a transaction violates public policy.

As we shall explain in the published portion of this opinion, aside from obligations imposed by *statute* and implementing regulations, a real estate

broker's duty is derived from the agreement between the broker and client. In this case, the parties' agreement in effect specified that defendant had no duty to recognize and advise plaintiff regarding the potential tax consequences of his transactions. Contrary to plaintiff's claim, this contractual provision did not violate public policy because the Legislature has determined that sellers and buyers of real estate should obtain tax advice from professionals other than real estate brokers. (Civ. Code, § 2375.) In the unpublished part of this opinion, we reject plaintiff's contention that the trial court erred in ordering plaintiff to pay defendant's attorney fees. Accordingly, we shall affirm the judgment.

FACTS

Plaintiff is a teacher of high school English and foreign languages with 25 years' experience in real estate investing. With the professional assistance of defendant, plaintiff had invested in Winters, California, for five or six years prior to the present transactions.

On April 17, 1990, plaintiff executed an "Exclusive Authorization and Right to Sell" (listing agreement) to sell his property at 1028 Adams in Winters. The property was sold and escrow closed on May 29, 1990.

On April 25, 1990, plaintiff contracted to purchase property at 467 Edwards in Winters. Escrow closed on June 18, 1990.

On June 14, 1990, plaintiff executed a listing agreement to sell his property at 1001 Adams in Winters. The property was sold and escrow closed on August 15, 1990.

On July 5, 1990, plaintiff contracted to purchase property at 1103 Hoover in Winters. Escrow closed on August 28, 1990.

The listing agreements for the sales of the properties at 1028 Adams and 1001 Adams advised plaintiff: "A real estate broker is the person qualified to advise on real estate. If you desire legal or tax advice, consult an appropriate professional." For each of the four transactions defendant furnished plaintiff a written "Disclosure Regarding Real Estate Agency Relationships" which advised plaintiff: "The above duties of the agent in a real estate transaction do not relieve a Seller or a Buyer from the responsibility to protect their [sic] own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional." In addition, for each of the four

transactions plaintiff executed a "Real Estate Purchase Contract and Receipt for Deposit" which advised him: "Legal and Tax Advice: A real estate broker or agent is qualified to advise on real estate. If you require legal or tax advice, consult your attorney or accountant. No representation or recommendations are made by the broker, agents, or employees as to the legal sufficiency, effect, or tax consequences of this document or the transaction relating thereto. These questions are for your attorney and or your accountant."

During the course of the transactions, plaintiff asked defendant how many days he had to reinvest the proceeds of the two sales in order to avoid paying capital gains tax. Defendant answered: "I don't know. . . . Ask your tax person." Plaintiff called his accountant. "[T]he tax lady that does [his] taxes wasn't in, so [he] talked to her assistant, and she said [he had] forty-five days [to reinvest]."

After the transactions were completed, plaintiff's accountant prepared plaintiff's income tax returns and informed him he incurred a capital gains tax liability of approximately $34,000. The transactions failed to qualify as tax-deferred exchanges because they were not conducted through a third party intermediary.

DISCUSSION

I

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. . . . ■ First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] Second[], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . ■ The motion must stand self-sufficient and cannot succeed because the opposition is weak. . . . A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. . . . [¶] ■ When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . . ■ Counteraffidavits and declarations need not prove the opposition's case; they suffice if they disclose the

existence of a triable issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted; see *FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381-382 [282 Cal.Rptr. 508].)

Plaintiff's complaint alleges defendant was negligent in two respects: in preparing the deposit receipts and structuring the escrows; and in failing to tell plaintiff of defendant's lack of expertise in structuring tax-deferred real estate exchanges and by further failing to advise plaintiff to seek other professional assistance in structuring the transactions.

The issue framed by each theory of liability relates to defendant's failure to inform plaintiff of the tax consequences of his transactions. Plaintiff contends defendant had a duty to "recogniz[e] a tax-free exchange setting" and to "direct[] the client to an exchange company if [defendant] did not possess the requisite expertise." (Italics omitted.) ██ ██ According to plaintiff, defendant "at least had an obligation to 'issue-spot' or warn Plaintiff about the capital gains consequences of proceeding without adequate advice . . . ." (Italics omitted.)[1]

[1]To provide a factual context for the claimed duty, plaintiff asks us to take judicial notice of "the substantial 'industry' that has grown-up [*sic*] under [section 1031]" as demonstrated by a series of documents contained in plaintiff's appendix to his opening brief. Defendant retorts the request for judicial notice should be denied because none of the documents was before the trial court and several documents are not proper subjects of judicial notice.

"Appendix A" contains an advertisement and a brochure by private corporations whose business includes conducting section 1031 exchanges. "Appendix B" is a private corporationss summary of changes in federal regulations relating to section 1031 exchanges; the regulations themselves are not included. "Appendix A" and "Appendix B" are not appropriate subjects of judicial notice because they do not contain matters of "common knowledge within the territorial jurisdiction of [this] court" (Evid. Code, § 452, subd. (g)) and there is no other statutory basis for judicial notice of this information.

"Appendix C" is an official publication of the California Department of Real Estate stating the general areas tested on the real estate brokers' examination, including "Tax Implications of Real Estate Ownership." However, section 1031 is not mentioned explicitly and no level of expected proficiency with section 1031 is indicated. "Appendix D" is a California Department of Real Estate bulletin containing a "Revised Code of Ethics for R. E. Licensees." No reference is made to section 1031 exchanges. "Appendix E" is an excerpt from 2 Miller and Starr, California Real Estate (2d ed. 1989) Agency, section 3:18.

 "Appendix C" and "Appendix D" are "official acts" of the executive department of this state, and "Appendix E" is not reasonably subject to dispute and is capable of immediate and accurate determination by reference to the cited text. (Evid. Code, § 452, subds. (c), (h).) Thus, these documents are proper subjects of judicial notice. However, "courts have cautioned against judicially noticing matters that were not before the trial court. ██ '[A]s a general rule the [appellate] court should not take . . . [judicial] notice if, upon examination of the entire record, it appears that the matter has not been presented to and considered by the trial court in the first instance.' [Citations.] Such a rule prevents the unfairness that would flow from permitting one side to press an issue or theory on appeal that

In her motion for summary judgment, defendant asserted she negated plaintiff's claims of negligence by showing she had no duty to prepare the escrows and structure the deposit receipts so. as to minimize adverse tax consequences, she had no duty to advise plaintiff of her lack of experience with tax-deferred exchanges, and she fulfilled any duty to advise him to seek other professional assistance regarding the tax consequences of the transactions. In support of her motion for summary judgment, defendant submitted excerpts from plaintiff's deposition, his responses to interrogatories and requests for admissions, and documentation from numerous real estate transactions in which plaintiff participated as buyer or seller, including those here in issue.

We agree with the trial court that defendant's showing established facts which negated plaintiff's claims and justified a judgment in defendant's favor. (*AARTS Productions, supra,* 179 Cal.App.3d at pp. 1064-1065.)

"The elements of a cause of action for negligence are commonly stated as (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the, resulting injury; and (4) actual loss or damage." (*Ahern* v. *Dillenback* (1991) 1 Cal.App.4th 36, 42 [1 Cal.Rptr.2d 339]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60.) Failure to prove any one of these elements is fatal to plaintiff's recovery. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 612 [116 Cal.Rptr. 919].)

Whether a legal duty of care exists in a given factual situation is a question of law to be determined by the court, not the jury. (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; *Ahern, supra,* 1 Cal.App.4th at p. 42; *Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 213 [219 Cal.Rptr. 845].) Where a duty is found to exist, a real estate agent must fulfill it by exhibiting the degree of care and skill ordinarily exhibited by professionals in the industry. (2 Miller & Starr, *op. cit. supra,* § 3:17, pp. 94-95; *Montoya* v. *McLeod* (1985) 176 Cal.App.3d 57, 65 [221 Cal.Rptr. 353]; *Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 871 [86 Cal.Rptr. 359]; *Brady* v. *Carman* (1960) 179 Cal.App.2d 63, 68 [3 Cal.Rptr. 612].)

The degree of care and skill required to fulfill a professional duty ordinarily is a question of fact and may require testimony by professionals in

---

was not raised [in the trial court]. [Citation.]" (*People* v. *Hardy* (1992) 2 Cal.4th 86, 134 [5 Cal.Rptr.2d 796, 825 P.2d 781].) *Hardy* provides an exception where the request for judicial notice is unopposed and the matters to be judicially noticed are not reasonably open to dispute. (*Id.,* at pp. 134-135.) Here, the request is opposed, and the general rule applies. Plaintiff's request for judicial notice is denied.

the field if the matter is within the knowledge of experts only. (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193]; see *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 844-845 [206 Cal.Rptr. 136, 686 P.2d 656].) ▮ However, expert testimony is incompetent on the predicate question whether the duty exists because this is a question of law for the court alone. (*Clarke, supra,* 174 Cal.App.3d at p. 214.) ▮ Plaintiff's contention that the trial court erroneously disregarded "custom and practice testimony, i.e., the testimony of other professionals in the same field," fails because, for reasons which follow, the trial court properly concluded defendant had no duty to structure the transaction to minimize plaintiff's tax liability or to advise him of her lack of expertise with section 1031 exchanges.

▮ Real estate brokers are subject to two sets of duties: those imposed by regulatory statutes, and those arising from the general law of agency. (2 Witkin, Summary of Cal. Law, *op. cit. supra,* Agency and Employment, § 253, pp. 245-246.) Plaintiff does not contend defendant failed to fulfill a duty imposed by statute or implementing regulation (e.g., Civ. Code, § 1102 et seq. [agent's duty to inspect property; disclosure requirements]). Thus, he must derive defendant's duty from the general law of agency, i.e., from the agreement between the principal and agent. ▮ "The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the parties, interpreted in light of the circumstances under which it is made, except to the extent that fraud, duress, illegality, or the incapacity of one or both of the parties to the agreement modifies it or deprives it of legal effect." (Rest.2d Agency, § 376; *Anderson* v. *Badger* (1948) 84 Cal.App.2d 736, 741 [191 P.2d 768]; 3 Cal.Jur.3d, Agency, § 87, pp. 119-120; cf. *Ahern, supra,* 1 Cal.App.4th at p. 43 [insurance agent owes duties normally found in agency relationship].)

▮ Plaintiff's agreement with defendant is contained in the listing agreements, disclosure statements and purchase contracts described above. Plaintiff admitted each document was genuine, stated he read each document prior to signing, acknowledged he understood each document was legally significant, and admitted defendant did nothing to prevent him from reading each document in its entirety. Plaintiff claimed he only "glanced through" some of the documents because "[i]t is a bore to read through these kinds of real estate transactions." ▮ However, his failure to read the documents does not permit him to avoid their legal effect, and plaintiff does not contend otherwise. (E.g., *Bolanos* v. *Khalatian* (1991) 231 Cal.App.3d 1586, 1590 [283 Cal.Rptr. 209].)

▮ The listing agreements for sales of the properties at 1028 Adams and 1001 Adams told plaintiff that defendant, a real estate broker, was

"qualified to advise on real estate," but informed plaintiff he should "consult an appropriate professional" if he desired legal or tax advice. The real estate agency disclosure forms advised plaintiff to "carefully read all agreements to assure that they adequately express your understanding of the transaction," and reiterated that "[a] real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional."[2] The real estate purchase contracts informed plaintiff that "[a] real estate broker or agent is qualified to advise on real estate. If you require legal or tax advice, consult your attorney or accountant." Moreover, the contracts specifically advised plaintiff that "[n]o representation or recommendations are made by the broker, agents, or employees as to the legal sufficiency, effect, or tax consequences of this document or the transaction relating thereto. These questions are for your attorney and or your accountant."

These documents negate plaintiff's claim of duty. His allegation that defendant had a duty to prepare the deposit receipts and structure the escrows in a manner which would minimize plaintiff's tax liability is negated by the purchase contracts' provision stating the broker makes no representation or recommendation as to the tax consequences of the transaction. Were defendant subject to the alleged duty, she necessarily would "represent" she has structured the transaction to minimize any adverse tax consequences. This is precisely what the document states the broker does not do.

Plaintiff's claim that defendant had a duty to inform him of her lack of expertise with section 1031 exchanges and to advise him to seek other professional help in that regard is negated by the documents' provisions stating a broker is qualified to advise on real estate but legal or tax advice should be obtained from a "competent professional," an "attorney and or . . . accountant." These documents also provide the very advisement which plaintiff claims defendant should have given: that plaintiff should "seek other professional assistance" regarding tax consequences of the transactions here at issue.

Likewise, plaintiff's allegation that defendant had a duty to "issue-spot" or warn him regarding tax consequences of the transactions is at odds with the documents' admonition that plaintiff should get his tax advice elsewhere. (Cf. *Ahern, supra,* 1 Cal.App.4th 36 [absent some conduct on the part of the

---

[2]This language is specified by Civil Code section 2375 (Disclosure Form—Contents). Claiming the statute requires the language to appear on the disclosure form only if the agent is representing both the seller and the buyer, plaintiff argues: "Since [defendant] was [plaintiff's] (Seller's) agent, no such language was required." Plaintiff is wrong: the quoted language is required to appear whether the agent represents the seller, the buyer, or both. (Civ. Code, § 2375.)

agent consistent with assuming broader duties, the agent's duties are limited to those arising out of the contract].)[3]

This case is similar to *Santos* v. *Wing* (1961) 197 Cal.App.2d 678 [17 Cal.Rptr. 457], where sellers of property were dissatisfied because, as structured, the sale had unfortunate tax consequences. In rejecting sellers' effort to hold the real estate agents responsible, the court explained: "We do not find in the evidence any suggestion that the [agents] had any knowledge of the appellants' tax situation, or what if any tax might result to the appellants from this sale. The [agents] did not attempt to give the appellants any tax advice. On the contrary, they urged appellants to seek counsel; the appellants did have an accountant and they had an attorney, and the appellant Santos held the seller's instructions in his possession for several days for the announced purpose of seeking legal advice." (*Id.*, at p. 684.) Here, as in *Santos*, defendant real estate broker did not attempt to give tax advice. ▇▇▇ ▇ ▇ ▇▇▇ Rather, she repeatedly advised plaintiff in writing to seek tax advice from an attorney or accountant.[4]

Citing *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 98-101 and *Akin* v. *Business Title Corp.* (1968) 264 Cal.App.2d 153, 158-159 [70 Cal.Rptr. 287], plaintiff contends the disclaimer language in the listing agreements, disclosure statements and purchase contracts should be disregarded. *Tunkl* and *Akin* hold that contractual language exculpating a party from responsibility for its future negligence is invalid under Civil Code

---

[3]In *Ahern*, the purchasers of an automobile insurance policy sued their insurance agent claiming the agent negligently failed to procure certain insurance coverages or negligently failed to advise of the availability of such coverages. (1 Cal.App.4th at pp. 40-41, 42.) Summary judgment for the agent was affirmed because the agent had no duty, contractual or otherwise, to procure the additional coverage or advise the insureds of its availability. Plaintiff claims *Ahern* is "completely different from the instant case" because the insureds "could have purchased greater insurance coverage than that actually sold." The asserted distinction has no merit. Plaintiff could have consulted an attorney or an accountant, not "to look for properties to purchase in relation to an anticipated tax-free exchange," but to ensure that the exchange of properties he had located satisfies the legal requirements for section 1031 exchanges.

[4]Plaintiff contends *Santos* does not aid defendant based on an interpretation of the case by commentators. Miller and Starr suggest the *Santos* court "*infers* [*sic*] that [the broker] had a duty to disclose the tax problems if they knew [of the plaintiffs' tax situation], but the broker's duty in that regard was satisfied by urging the sellers to seek counsel from their attorney and accountant." (2 Miller & Starr, *op. cit. supra*, § 3:18, p. 111, italics in original.) However, *Santos* did not analyze whether there exists a duty to disclose tax consequences if the broker is aware of the seller's tax situation, and the court did not consider whether such a duty could be modified or negated by language in the agreements between the broker and the seller. "[C]ases are not authority for propositions not discussed or presented." (*People* v. *Hill* (1974) 12 Cal.3d 731, 766, fn. 34 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872].)

section 1668 where the contract affects a public interest. (*Tunkl, supra,* 60 Cal.2d at pp. 96, 101-104 [a release from liability for future negligence imposed as a condition for admission to a charitable research hospital is invalid as contrary to the public interest]; *Akin, supra,* 264 Cal.App.2d at p. 159.)

Plaintiff's reliance on *Tunkl* and *Akin* is misplaced. In this case, the contractual language does not exculpate defendant from her negligence, i.e., from her breach of an extant duty of care. Rather, the contractual language in effect specifies that a real estate broker *has no duty* to provide legal or tax advice. Thus, the failure to provide such information is not negligence, and the rules governing exculpation from negligence do not apply.

Nevertheless, plaintiff suggests that any contractual provision relieving real estate brokers of a duty to recognize and alert a client to the potential tax consequences of a transaction violates public policy. (Cf. *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383] [holding broker has duty to inspect premises; later codified in Civ. Code § 1102 et seq.]; see also *Schoenberg* v. *Romike Properties* (1967) 251 Cal.App.2d 154, 162 [59 Cal.Rptr. 359] [duty to investigate property to determine its value].) According to plaintiff, "current real estate practice" dictates that a real estate professional has a duty to recognize tax consequences of a transaction and to structure tax-deferred exchanges when appropriate. He points to evidence that defendant was familiar with tax-deferred exchanges, had taken a class entitled "Unmasking and Masking and Creatively Protecting Clients in Exchanges," and had attended a seminar on "Tax Aspects of Real Estate." Plaintiff claims that, because brokers hold themselves out to the public as possessing special knowledge in real estate transactions and "given the evolution of the real estate profession into new and emerging fields (including [tax-deferred exchanges])," public policy requires brokers to have a duty to recognize and advise clients of the tax consequences of their transactions and of the need for tax-deferred exchanges.

This contention fails because the Legislature has determined that public policy expects sellers and buyers to obtain tax advice from professionals other than real estate brokers. By enacting Civil Code section 2375, the Legislature has mandated that buyers and sellers be told: "A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional." We decline to conclude that public policy requires real estate brokers to provide tax advice when the Legislature has determined that such advice should be sought from other competent professionals.

Plaintiff also claims the "boilerplate" language in his contracts stating defendant was not responsible for giving tax advice is adhesive and, thus,

should be disregarded. ▆ "A contract of adhesion has been defined as 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citations.]" (*Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1317 [231 Cal.Rptr. 315].) ▆ The contention fails because, even if it is adhesive in nature, "the contract would remain fully enforceable unless (1) all or part of the contract fell outside the reasonable expectations of the weaker party or (2) it was unduly oppressive or unconscionable under applicable principles of equity." (*Ibid.*) Because the Legislature has determined that buyers and sellers of real estate should rely on professionals other than real estate brokers for tax advice, any expectation on the part of plaintiff that defendant would provide such information or "issue-spot" tax problems was not reasonable. Moreover, none of the contractual terms is either "unduly oppressive" or "unconscionable." (*Ibid.*)

Since defendant's showing in support of her motion for summary judgment established facts which negated plaintiff's claims of duty, the final step of our analysis is to determine whether plaintiff's opposition to defendant's motion for summary judgment demonstrated the existence of a triable, material issue of fact. (*AARTS Productions, supra,* 179 Cal.App.3d at pp. 1064-1065.) It does not. Plaintiff's opposition relied on excerpts from defendant's deposition which suggest defendant was knowledgeable about the requirements for section 1031 exchanges. While such knowledge may establish an ability to structure the transaction to minimize tax consequences or to warn plaintiff, it does not establish a duty to do so. Defendant cannot be negligent for failing to do what she had no duty to do. (*Banerian, supra,* 42 Cal.App.3d at p. 613.)[5]

The trial court properly granted summary judgment because defendant demonstrated her entitlement to judgment as a matter of law, and plaintiff failed to raise a material factual issue necessitating a trial. (*AARTS Productions, supra,* 179 Cal.App.3d at pp. 1064-1065.)

II*

. . . . . . . . . . . . . . . . . . . . . . . .

[5]Plaintiff asks us to augment the record to include plaintiff's and defendant's depositions in their entirety because the latter "leaves the reader with a clear impression that Defendant, herself, recognized a duty in 1031 exchanges." Because such recognition would not be relevant to establish any duty on the part of defendant, plaintiff's request for augmentation is denied.

*See footnote, *ante,* page 745.

## Disposition

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 1, 1993.