[No. D022333. Fourth Dist., Div. One. Apr. 14, 1997.]

GORDON J. PADGETT et al., Plaintiffs and Appellants, v.
TIMOTHY A. PHARISS et al., Defendants and Respondents.

COUNSEL

DeHaan & Mayfield, Gayle J. Mayfield and Tamara D. DeHaan for Plaintiffs and Appellants.

White & Bright, David S. Bright, Jennifer M. McGauley, Leigh A. Rayner, Frank and Ayers, Robert D. Frank and Katherine A. Yesson for Defendants and Respondents.

William M. Pfeiffer, Steven A. Sokol, Howard S. Fallman, June Babiracki Barlow and Neil Kalin as Amici Curiae on behalf of Defendants and Respondents.

OPINION

HUFFMAN, Acting P. J.—Construction defect litigation seems as common as crabgrass in planned unit developments in California. Is it so common that a real estate agent participating in a buy-sell transaction for a residence located within a planned unit development has a duty, without more, based on statute or common law, to inquire of the subject homeowners association whether (1) there are construction defects at the common areas of the property or (2) there is pending or proposed litigation concerning those defects? (Civ. Code, § 2079 et seq.)[1] Here, the trial court said no, granting summary judgment to the buyers' and the sellers' real estate agents and brokers on the plaintiff buyers' complaint against them on various fraud and negligence theories, arising out of the buyers' purchase of property in a development which had these problems. On this record, the trial court

[1]All statutory references are to the Civil Code unless otherwise specified.

correctly analyzed the duty issues as a matter of law and we affirm the judgment.

## Factual and Procedural Background

On July 23, 1991, plaintiffs and appellants Gordon J. Padgett and Mary E. Padgett (collectively Padgett) entered into a real estate contract to buy a residence in the Stone Point development for $207,500. Padgett's real estate agent was Craig Hodgson of the Re/Max United real estate firm. The sellers' real estate agent was Timothy A. Phariss of the ERA Americana real estate firm.[2] The standard form real estate contract specified the sellers were to provide copies of the governing documents of the development and its homeowners association, the Stone Point-Sweetwater Homeowners' Association (the Association) to buyers. These documents included the covenants, conditions and restrictions (CC&R's), bylaws, and financial data. Sellers were also required to disclose in writing any known pending litigation affecting the property. After these documents were not initially provided, the escrow instructions were amended to require them to be supplied. The sellers also provided a transfer disclosure statement pursuant to section 1102.6, giving information about the property and stating there were no lawsuits pending against the seller threatening or affecting the real property. The sellers thus did not disclose there was any pending litigation concerning the common areas. Both buyers' agent Hodgson and sellers' agent Phariss filled out their parts of the disclosure statements, noting no evident problems with the property.

In fact, the Association for the development filed a construction defect action against the developer on June 28, 1991, approximately one month before Padgett signed the contract. Shortly before escrow closed in August 1991, the buyers received certain Association documents from escrow, including CC&R's, bylaws and a budget. In discovery, Padgett established that when sales were contemplated, the normal practice of the property manager for the Association at that time was to provide a letter to escrow stating litigation between the Association and the developer was pending. Although such a letter, dated July 1991, was found in the property manager's file for this development, Padgett never received such a letter from escrow or otherwise, according to their declarations. Prior to the close of escrow,

---

[2]The sellers of the property, Jesse J. Holloway and Craig E. Carpenter, were named as defendants in Padgett's complaint, and a jury found Padgett was entitled to rescind the contract with sellers. However, sellers are not involved in this appeal. For brevity, we will refer to the sellers' broker, Mortgage Burners, Inc., doing business as ERA Americana Realty and Mortgage, and Timothy A. Phariss collectively as ERA or Phariss. We will refer to the buyers' broker, Mar-Chris Investment Corporation, doing business as Re/Max United, and Craig Hodgson collectively as Re/Max or Hodgson..

various letters and newsletters were sent to homeowners in the development about proposed litigation, but these sellers denied knowledge of any pending litigation at the time of this transaction.

Before escrow closed, Padgett obtained a professional inspection of the property which disclosed no soil subsidence problems. Sellers' agent Phariss conducted a visual inspection of the property and saw no "red flags" which would warrant further investigation of the condition of the property. He had not previously been involved in sales in this development. The sellers did not tell their agent about any pending litigation or soil subsidence problems at the development. Buyers' agent Hodgson conducted a similar visual inspection which also disclosed no problems on the property warranting further investigation. He saw no references to soils problems on title company documents or Stone Point listings he reviewed.

After obtaining title to the property, Padgett learned of the pending Association litigation about defects in the common areas. In July 1993, Padgett brought this action for rescission and damages against the sellers and for damages against the two sets of real estate agents involved. Both agents were alleged to have committed intentional misrepresentation, negligent misrepresentation, suppression of fact, negligence and intentional and negligent failure to make statutorily required written disclosures and investigation. (§§ 1102.13, 2079.) As against buyers' agent Re/Max only, breach of fiduciary duty and constructive fraud were additionally alleged.[3] Padgett's theory was that the agents either knew about or should have discovered the existence of the pending Association litigation, and the property's fair market value was adversely affected by that litigation. Initial summary judgment motions by both agents were denied without prejudice for further discovery. (Code Civ. Proc., § 437c, subd. (h).)

At renewed summary judgment motions, both agents contended they were entitled to judgment as a matter of law because there were no triable issues of material fact about whether the agents had any knowledge of the pending construction defect lawsuit and because, under the circumstances of this case, the agents had no duty to discover that pending litigation, and no such duty was imposed by statute. Both agents made showings that they had no knowledge of pending litigation or construction defects at the development at the time of this transaction. Padgett made a showing that if either agent had called the Association offices and inquired if any litigation were pending, the Association would have answered yes and given out the Association's attorney's name and telephone number. The Association received

---

[3]The negligence and breach of fiduciary duty theories were added by amendment by leave of court during the summary judgment proceedings.

approximately 1,000 such calls per year. Padgett presented expert evidence from Lee R. Hess, a real estate broker and appraiser, that a real estate agent's duty of care includes ensuring the buyer receives all Association documents and information from the Association as to whether there is any pending, past, or future litigation at the development. In this expert's opinion, the agents should have ensured that Padgett received the July 1991 Association letter advising of pending litigation.[4]

In ruling on the motion, the trial court noted there was no inference the realty agents had knowledge of the pending litigation and Padgett failed to prove otherwise, instead providing only speculation that the agents must have had some such knowledge. After permitting a continuance for further briefing on the negligence and breach of fiduciary duty theory, the court granted summary adjudication on the remaining theories on the basis that the agents had no statutory or common law duty to discover and disclose material facts regarding the common area distress and the construction defect lawsuit. The court declined to treat the misrepresentation causes of action differently because all the theories related to the same duties and responsibilities under the Civil Code, which were to conduct a reasonably competent and diligent visual inspection. (§ 2079 et seq.)

At the continued hearing, the court discussed Padgett's expert evidence, stating that Padgett was applying a broader standard of care than the code required, specifically section 2079, and that that section did not require real estate agents to study court files to see whether any particular property was in litigation. Moreover, the existence of a fiduciary relationship did not require the buyers' agent to go beyond the statutory standard of care, as the fiduciary duty was the duty to carry out the responsibilities required under the particular circumstances. Summary judgment was granted and Padgett appeals.[5]

### DISCUSSION

■ We analyze the allegation of duty in this case according to the following summary judgment principles:

" 'Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we

---

[4]Numerous lodged documents were submitted to the trial court and have been provided this court as part of the record on appeal. ERA complains Padgett did not timely lodge his documents and seeks a costs award on that basis. (Cal. Rules of Court, rule 26.) However, those documents have now been provided, it is appropriate for each party to do so, and we do not base our award of costs on that circumstance.

[5]The California Association of Realtors has filed an amicus curiae brief supporting the position of the real estate agents in this appeal. (Cal. Rules of Court, rule 14(c).)

independently review them on appeal, applying the same three-step analysis required of the trial court. . . . First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. . . . [¶] Second[], we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . The motion must stand self-sufficient and cannot succeed because the opposition is weak. . . . A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . . Counteraffidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue.' [Citations.]" (*Carleton* v. *Tortosa* (1993) 14 Cal.App.4th 745, 752-753 [17 Cal.Rptr.2d 734].)

In this factual context, well-accepted rules govern a court's determinations of duty.

■ "Whether a legal duty of care exists in a given factual situation is a question of law to be determined by the court, not the jury. [Citations.] ■ Where a duty is found to exist, a real estate agent must fulfill it by exhibiting the degree of care and skill ordinarily exhibited by professionals in the industry. [Citations.]

■ "The degree of care and skill required to fulfill a professional duty ordinarily is a question of fact and may require testimony by professionals in the field if the matter is within the knowledge of experts only. [Citations.] ■ However, expert testimony is incompetent on the predicate question whether the duty exists because this is a question of law for the court alone." (*Carleton* v. *Tortosa*, *supra*, 14 Cal.App.4th at pp. 754-755.)

■ In making its determination of duty in the real estate transactions context, a court will take the following factors into account: "Real estate brokers are subject to two sets of duties: those imposed by regulatory statutes, and those arising from the general law of agency. [Citation.]" (*Carleton* v. *Tortosa*, *supra*, 14 Cal.App.4th at p. 755.) ■ If a statutory duty is not alleged, then a plaintiff may seek to derive the defendant's duty from the general law of agency, i.e., from the agreement between the principal and agent. " 'The existence and extent of the duties of the agent to the principal are determined by the terms of the agreement between the

parties, interpreted in light of the circumstances under which it is made, except to the extent that fraud, duress, illegality, or the incapacity of one or both of the parties to the agreement modifies it or deprives it of legal effect.' [Citations.]" (*Carleton* v. *Tortosa*, *supra*, 14 Cal.App.4th at p. 755.)

Here, we are required to apply these principles to several different theories arising from these facts. We discuss the nature and extent of these real estate agents' duties with respect to, first, the statutory and, second, the nonstatutory causes of action.

I

*Statutory Claims: Failure to Disclose and Investigate*

▮ These causes of action (Nos. 7, 8, and 9) are based on section 1102.13 and section 2079, and allege the real estate agents intentionally or negligently failed to make required written disclosures of facts concerning the property, and/or failed to investigate and disclose the condition of the property and related facts.[6] Padgett argues on appeal that the agents had a heightened duty of disclosure and investigation here, purely because this property was located in a planned unit development, and because such developments commonly have construction defect problems. Padgett gleans this heightened duty of disclosure from reading together several related statutes, sections 1102.6, 2079, and 2079.3, a statute defining the scope of a realty agent's inspection.[7] Padgett thus contends a clear legislative purpose has been evidenced to maximize disclosures of this kind. As further support,

---

[6]Section 1102.13 provides a remedy in damages for a willful or negligent failure to perform the disclosure duties required by the article, section 1102 et seq., Disclosures Upon Transfer of Residential Property. Section 1102.6 provides the form for the transfer disclosure statement, which Padgett alleges was inadequately filled out by these agents.

Section 2079 is the codification of the duties of a real estate broker or salesperson toward a prospective buyer of property, i.e., to inspect and disclose pertinent facts about the property offered for sale in a transaction in which that broker or salesperson is involved. Specifically, the real estate broker or salesperson has a duty "to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal . . . ." (§ 2079; see *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521], the genesis of this law.)

[7]Section 2079.3 now reads (italics added): "The inspection to be performed pursuant to this article does not include or involve an inspection of areas that are reasonably and normally inaccessible to such an inspection, *nor an affirmative inspection of areas off the site of the subject property or public records or permits concerning the title or use of the property*, and, if the property comprises a unit in a planned development as defined in Section 11003 of the Business and Professions Code, a condominium as defined in Section 783, or a stock cooperative as defined in Section 11003.2 of the Business and Professions Code, does not include an inspection of more than the unit offered for sale, if the seller or the broker complies with the provisions of Section 1368." (The italicized portion was added in 1994,

he supplies a copy of a Department of Real Estate brochure provided to real estate professionals, instructing them about required disclosures affecting the value of real property, such as lawsuits against the owner or affecting the property. (Disclosures in Real Property Transactions (Cal. Dept. of Real Estate, 3d ed. pamp. 1993).)

Padgett also points to this court's opinion in *Alexander* v. *McKnight* (1992) 7 Cal.App.4th 973, 976-978 [9 Cal.Rptr.2d 453], for the proposition that section 1102.6 must be liberally interpreted so that a buyer is fully informed by a seller on any matter which affects the value of property being purchased (in that case, noisy neighbors). (See also *People* ex rel. *Dept. of Transportation* v. *Muller* (1984) 36 Cal.3d 263, 269 [203 Cal.Rptr. 772, 681 P.2d 1340], remedial statutes are to be liberally construed to foster their objectives.)

Thus, Padgett reasons: A realty agent participating in a sales transaction of a unit in a planned unit development must know (1) there are common areas in the development, (2) there may be problems of various kinds in the development overall, and (3) the homeowners association normally has readily accessible information about such problems. Why not impose a duty, they ask, on the agents to pick up the phone and call the Association and inquire if any such problems exist which may affect the value of a unit?

ERA and Re/Max reply that no such duty may appropriately be imposed on this record because the home inspection of the property Padgett was buying showed no defects, the sellers did not disclose to the agents that there was any pending litigation or known common area defects, and the sellers did not disclose to the buyers any such litigation on their transfer disclosure form. The real estate professionals thus argue the statutory scheme does not impose a duty to inspect or disclose defects that are off-site of the particular unit being sold. Rather, the purpose of section 2079, as disclosed by its legislative history, was both to protect buyers of property by clarifying the holding in *Easton* v. *Strassburger, supra,* 152 Cal.App.3d 90, and "to facilitate the issuance of professional liability insurance as a resource for aggrieved members of the public." (See Historical and Statutory Notes, 10 West's Ann. Civ. Code (1997 packet supp.) foll. § 2079 under heading 1985 Legislation, pp. 98-99; see also Ins. Code, § 11589.5, providing that insurers shall not exclude from coverage a breach of the § 2079 duties.)

Further, section 2079.3 was amended in 1994 to clarify the obligations of real estate licensees and was "not intended to change any existing duty of a

---

after the events giving rise to this case.) It should be noted that section 1368 requires a seller of property to provide copies of the governing documents, restrictions, and assessments pertaining to the interest in the common interest development to be sold.

broker or salesperson to disclose material facts within the knowledge of the licensee, *including the existence of nuisances or other conditions of nearby properties that may affect the value or desirability of the property offered for sale*." (See Historical and Statutory Notes, 10 West's Ann. Civ. Code, *supra*, foll. § 2079.3 under heading 1994 Legislation, p. 100, italics added.) Under section 2079.3, if a seller complies with section 1368 by providing copies of relevant documents, the agent need not inspect more than the unit offered for sale, e.g., the common areas. (See fn. 7, *ante*.)

In *Wilson* v. *Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 307-309 [18 Cal.Rptr.2d 779], the court found no statutory or common law basis for an "intrusive, speculation-based duty of inspection and disclosure" which that plaintiff argued should have been imposed upon a broker who did not investigate a foundation to discover an absence of steel reinforcement and bolts by using X-ray methods. The court found the visual inspection required under section 2079 was not intended to encompass discovering structural defects through an intrusive inspection of areas normally inaccessible to such an inspection. (15 Cal.App.4th at p. 308.) Nor were there any "red flags" on the sold property indicating actual problems on the property. (*Ibid.*)

Here, too, the home inspection report disclosed no defects on this property, and Padgett could produce no evidence that the agents knew of any such defects in the common areas or of any litigation pending. On this record, Padgett can suggest no justifiable basis for imposing on the agents a duty of inquiry of the homeowners' association as outlined. It would not be such a simple matter as suggested to require telephone inquiry about defects and pending litigation of all homeowners associations for every transaction taking place on the premises, where there are no specific facts on which to base such a requirement. Nor does the statutory scheme require a search of public records by the agent. As the trial court noted, in some cases it would be difficult to tell from the caption of a case whether the particular property was in this type of litigation.

Moreover, the 1994 amendment to section 2079.3 made it clear that the subject inspection did not include areas off the site of the property or public records or permits regarding title or use of property, or an area greater than the actual unit offered for sale. In conclusion, this seems to us to be a case in which the plain language of the statute must control, so that this type of extended inspection is not required, and in which there is no room for interpretation to accomplish a purpose not appearing on the face of the statute or from its legislative history. (*Unzueta* v. *Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1697 [8 Cal.Rptr.2d 614].) The trial court correctly granted summary judgment on these theories.

## II

### *Nonstatutory Causes of Action*

At oral argument, the trial court and counsel discussed the scope of the duty under section 2079 to conduct a reasonably competent and diligent visual inspection of the property and to disclose to the buyer all facts materially affecting the value of the property, as revealed by the inspection. Padgett's attorney questioned whether the statutory standard of care should properly apply to the nonstatutory causes of action: various forms of misrepresentation, negligence and breach of fiduciary duty and constructive fraud. As to misrepresentation, the court responded to this argument by stating that all the theories related to the same duties and responsibilities under the Civil Code, which were to conduct a reasonably competent and diligent visual inspection. The court found no showing had been made that the agents made representations based on their knowledge of such matters affecting the value of the property.

As to the negligence and fiduciary duty/constructive fraud theories, the court concluded that contrary to Padgett's expert's opinion, section 2079 did not require real estate agents to study court files to see whether any particular property was in litigation. Moreover, the existence of a fiduciary relationship did not require the buyer's agent to go beyond the statutory standard of care, since the fiduciary duty should be interpreted as the duty to carry out the responsibilities required under the particular circumstances. Padgett now contends the trial court erroneously applied the statutory rule to these nonstatutory theories in light of the expert evidence presented to the effect that the agents' duties should have been carried out differently. (*Carlton* v. *Tortosa, supra,* 14 Cal.App.4th at p. 754.)

We reject this initial claim of error. The record shows the trial court analyzed the misrepresentation claims with close attention to the elements of the various fraud-based causes of action, particularly whether any misrepresentations had been made or any facts suppressed. (See pt. IIA, *post.*) More than the statutory standard was taken into account. Similarly, on the negligence and fiduciary duty theories, the trial court analyzed the issues in terms of the predicate question of whether the claimed duty existed, not whether such an assumed duty had been carried out in a particular way. (*Carlton* v. *Tortosa, supra,* 14 Cal.App.4th at pp. 754-755.) The court properly considered all the relevant factual and legal circumstances in deciding the scope of the fiduciary duty involved, and it was not error to apply the statutory standard as part of that determination.

■ Moreover, where there is no issue of material fact, it is appropriate to affirm the judgment if correct on any theory of law applicable to the case, regardless of whether the trial court relied on that theory. (*Western Mutual Ins. Co.* v. *Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].) As we will next discuss, summary judgment was appropriate on each of the nonstatutory theories.·

A

*Misrepresentation Theories*

■ Padgett alleges intentional and negligent misrepresentation and suppression of fact based on the same basic set of facts: the agents represented the property had a fair market value of $207,500, the purchase price, and the development had a tremendous potential for appreciation (based on a flyer distributed about the property). The suppression of fact claim adds the allegation the agents suppressed facts they knew about soil subsidence and litigation at the development.

In analyzing these claims, the trial court rejected Padgett's attempts to have the matter decided on credibility grounds, based on the competing declarations about what the real estate agents knew or should have known. This was a correct approach under Code of Civil Procedure, section 437c, subdivision (e). The trial court also rejected Padgett's theory that there was any evidence supporting imputation of the sellers' knowledge, if any, to their agent, or any duty to reveal such knowledge.

Even if the agents had communicated an opinion about the fair market value of the property, such an opinion would not be actionable as a misrepresentation. (*Kahn* v. *Lischner* (1954) 128 Cal.App.2d 480, 487 [275 P.2d 539].) Nor is the flyer suggesting the development has a tremendous potential for appreciation an actionable misrepresentation, for the same reason. (*Ibid.*) Padgett failed to show the agents were in possession of facts about the value of the property, other than by speculating they must have known more than they said. " '[T]he opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation. [Citations.]' [Citation.]" (*Visueta* v. *General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1615 [286 Cal.Rptr. 402].) Such is the case here. The trial court did not err in granting summary judgment on the misrepresentation theories.

### B

### *Negligence*

 Padgett alleges the real estate agents breached their duties of care by failing to ensure that pursuant to the sales contract, the sellers provided the buyers with homeowners association documents and disclosed known litigation.[8] Padgett also alleges the agents (1) negligently failed to inquire of the Association about factors adversely affecting the value of the property, such as pending litigation; (2) did not ensure the missing July 1991 letter about pending litigation reached them; and (3) failed to verify the sellers' transfer disclosure statement which omitted any mention of such litigation. Padgett supported his position with expert testimony that the agents should have ensured Padgett learned of such information.

To evaluate these claims, the trial court first looked to the statutory standard of care set out in section 2079, stating that the agents were not obligated to go out and study court files to see if any particular property were in litigation. The court further stated the agents were not bound to pursue the homeowners' association to make sure it carried out its duties to provide information on request. We agree with the trial court's analysis. Moreover, as discussed above in part I, *ante*, the agents were not shown to be in possession of facts placing them under a duty to inquire of the Association if there was related pending litigation. Nor did Padgett show the agents were under an independent duty to ascertain the true fair market value of the property. "Whether a legal duty of care exists in a given factual situation is a question of law to be determined by the court, not the jury." (*Carleton* v. *Tortosa, supra,* 14 Cal.App.4th at p. 754.) The trial court ruled correctly on the question of duty here.

### C

### *Breach of Fiduciary Duty and Constructive Fraud Theories*

 In these related causes of action, Padgett contends that the buyers' broker Re/Max had an enhanced duty of inquiry to learn of any litigation

---

[8]Eventually, the escrow instructions were amended to include the contract condition that the seller provide the relevant documents. Thus, Padgett suffered no damage even if a duty were breached in this respect. It should also be noted that although negligence is alleged against both ERA and Re/Max, on appeal Padgett only argues negligence as to ERA (sellers' agent), apparently preferring to focus on the fiduciary duty theory as to buyers' agent Re/Max. However, the judgment disposes of all causes of actions as to both agents, so we discuss this theory generally.

concerning the common areas at the development and/or subsidence at the site, as affecting the value of the property, because an agent should advise and investigate on behalf of the client on the overall desirability of the transaction. (See *Montoya* v. *McLeod* (1985) 176 Cal.App.3d 57, 64-65 [221 Cal.Rptr. 353].) Padgett also complains in this context about the failure to ensure the buyers received all documents, such as the Association documents (eventually provided to escrow; see fn. 8, *ante*), and the missing July 1991 Association letter about pending common area litigation. Finally, it is alleged Re/Max did not disclose all facts known to it.

It is not disputed that Re/Max owed fiduciary duties to its client Padgett. Such duties require full and complete disclosure of all material facts respecting the property or relating to the transaction in question. (*Ford* v. *Cournale* (1973) 36 Cal.App.3d 172, 181, fn. 6 [111 Cal.Rptr. 334, 81 A.L.R.3d 704].) "No difficulty is encountered in imposing liability on an agent or broker for an affirmative and intentional misrepresentation on his part. [Citations.] Similarly, no difficulty should be found in imposing liability on him for mere nondisclosure since his conduct in the transaction amounts to a representation of the nonexistence of the facts which he has failed to disclose (cf. Rest., Torts, § 551). His fraud is of a different type; it is 'negative' rather than 'affirmative' [citation]; but it is fraud nonetheless. [¶] It should be pointed out that whether the matter not disclosed by the seller or his agent is of sufficient materiality to affect the value or desirability of the property, and thus make operative the rule announced by the foregoing authorities, depends on the facts of the particular case." (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 736-737 [29 Cal.Rptr. 201, 8 A.L.R.3d 537], italics omitted.)

The trial court analyzed the scope of the fiduciary duty owed, and the duty to disclose and/or inquire, in light of the particular circumstances of this case, using the standard of section 2079. The court ruled that the existence of the fiduciary relationship here did not require the buyers' agent to go beyond that standard. The record supports its conclusions, because there was no showing Re/Max or Hodgson had knowledge, either actual or imputed, of the subsidence at the development or of the litigation. Hodgson could not disclose what he did not know, nor was he on notice of facts putting him under a duty to inquire about the Association's knowledge of pending litigation, in order to verify what the sellers disclosed or did not disclose. He should not be deemed to have such a duty as a matter of law simply because this property was located in a planned unit development. Under all the relevant circumstances, there was no duty to do what Padgett believes should have been done, and the trial court's ruling correctly recognized that state of the law.

## Disposition

The judgment is affirmed. Padgett to pay all costs.

Nares, J., and Haller, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 16, 1997.