Filed 11/21/14  Anderson v. Coldwell Residential Brokerage CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVID ANDERSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al.,<br><br>    Defendants and Respondents. | B249615<br><br>(Los Angeles County<br>Super. Ct. No. SC114680) |

APPEAL from an order of the Superior Court of California, County of Los Angeles.  Honorable Craig D. Karlan.  Affirmed.

Gotfredson & Associates, E. Jay Gotfredson and Seth Weinglass for Plaintiff and Appellant.

Klinedinst, Neil R. Gunny and Mark J. Goldsmith for Defendants and Respondents.

_____

David Anderson purchased an undeveloped lot in an unincorporated portion of the coastal community of Malibu in 2008. When he applied for a permit to build a house, the California Coastal Commission issued a conditional permit that required, among other things, that Anderson purchase another coastal lot and retire it as open space. Anderson consequently abandoned the development and, in February 2012, filed a suit against his real estate broker, William Moss, alleging Moss failed to inform him of the possibility that the commission would require him to purchase an additional lot to mitigate the development's impact on the coastal area.

The trial court granted Moss summary judgment, finding no evidence supported Anderson's claims. Anderson appealed, arguing Moss breached his duty of professional care and misrepresented the lot was suitable for Anderson's intended purpose.

We affirm.

**BACKGROUND**

In February 2007, Anderson executed an agreement with Maryanne Lataif to purchase an undeveloped residential lot in an unincorporated area of Malibu (hereafter the Malibu lot), with the intent to build a house there (hereafter Lataif-Anderson purchase). At the time, Lataif was still in escrow to purchase the Malibu lot from the estate of Diana Cap (hereafter Cap-Lataif purchase). After escrow closed on the Cap-Lataif purchase, the Lataif-Anderson purchase was effected through two deed transfers.

Moss, a real estate agent with Coldwell Banker Residential Brokerage Company, represented all parties in the Cap-Lataif and Lataif-Anderson purchases.

The Lataif-Anderson purchase agreement—a form agreement issued by the California Association of Realtors—provided that "seller shall . . . disclose known material facts and defects affecting the property . . . ." The agreement "strongly advised [the buyer] to investigate the condition . . . suitability . . . and all matters affecting the value or desirability of the property," and stated that the broker does not "guarantee, and in no way assume responsibility for, the condition of the Property." The agreement provided that the broker would not verify any "laws, ordinances . . . zoning . . . [or] governmental permits" and advised the buyer to "investigate whether these matters affect

2

Buyer's intended use of the Property." The agreement also included a provision giving Anderson 70 days from acceptance to complete all investigations. Another section in the agreement restated that the broker was not responsible for "identifying defects not known" to the broker or inspecting public records, and that the buyer agrees to seek assistance from appropriate professionals regarding the lot's usability.

Anderson also received and initialed documents entitled "Statewide Buyer and Seller Advisory" and "Malibu/Topanga Disclosure Addendum." The documents advised that the lot may be within the jurisdiction of the California Coastal Commission, which may restrict any new development on it, and advised the buyer "to consult a qualified specialist regarding coastal development issues . . . [and] check with the City of Malibu and the California Coastal Commission for further information."

Anderson began exploring the lot's development potential and construction financing shortly after executing the agreement. The only California Coastal Commission document on record relating to the Malibu lot was a notice of violation the commission had sent to Diana Cap in 2007 pertaining to grading activities that had occurred on site. The notice contained an appendix that advised owners that applications for development of any coastal lot would require one or more of 21 listed items, one being a certificate of compliance to demonstrate parcel legality.

Lataif closed escrow on her purchase from Cap's estate, and in February 2008, transferred half of her interest in the property to Anderson.

Sometime later, Anderson and Moss terminated their broker agreement and replaced it with a referral/finder's fee agreement in exchange for a reduction in Moss's fee from $50,000 to $25,000. In March 2008, Anderson hired an architect to assist with permit processing through the County of Los Angeles and the California Coastal Commission.

In June 2008, 16 months after execution of the February 2007 purchase agreement, Anderson executed a revised agreement reflecting a purchase price of $440,000, down from the original $500,000, and stating Anderson had "completed and approved all his

3

investigation prior to entering into this agreement." Lataif then transferred the remaining half interest to Anderson, at which time he became the sole owner of the Malibu lot.

In May 2010, the County of Los Angeles determined the Malibu lot had been illegally subdivided in 1956. The county nevertheless issued a conditional certificate of compliance that would legalize the lot if the California Coastal Commission approved Anderson's development. In February 2011, the commission confirmed the lot violated the Subdivision Map Act of 1972 because the 1956 subdivision had been illegal. To mitigate the impact of Anderson's proposed development, the commission issued a conditional development permit that required him to purchase another coastal lot and permanently designate it as open space, a program known as Transfer of Development Credit or TDC. Anderson determined he could not bear the additional TDC cost, estimated to be in excess of $50,000, and abandoned the development.

In October 2011, Anderson sued Moss and Coldwell Banker in the Los Angeles Superior Court, alleging Moss failed to disclose unspecified "regulatory requirements . . . affecting [his] Property's owner's rights regarding development of the Property . . . such as . . . TDCs," and that these requirements "would prevent [him] from building his family's residence on the Property." Anderson alleged fraudulent concealment, negligent nondisclosure of material facts, and breach of fiduciary duty. Moss answered with a general denial and moved for summary judgment.

Anderson filed a cross-motion for summary judgment or summary adjudication, supported by declarations by two real estate professionals, Thomas Bates and Lawrence Jacobson, who opined that Moss owed and breached a duty to discover and report that Anderson's proposed coastal development would run afoul of the California Coastal Commission. Bates observed that on the county assessor's map, the Malibu lot's boundary was marked with a dotted line. He opined any real estate broker would know that this indicated there was a problem with the subdivision.

For his part, Moss argued he owed no duty to research public records for possible California Coastal Commission issues and declared he had no knowledge the Malibu lot had been illegally subdivided in 1956, and had never heard of a TDC requirement being

4

imposed on a single-family residential development. Moss objected that Bates's and Jacobson's opinions constituted improper legal arguments.

In April 2013, the trial court sustained Moss's objections and granted his motion and denied Anderson's motion. Anderson filed a motion for new trial which was denied, then appealed from the ensuing judgment.

## DISCUSSION

A trial court may grant summary judgment or summary adjudication when "no triable issue as to any material fact" exists and "the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To obtain summary judgment, a moving defendant must show one or more elements of each cause of action cannot be established or there is a complete defense to each cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the moving defendant has met its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists as to each cause of action or asserted defense. (*Ibid*.) We review the trial court's ruling on a motion for summary judgment de novo, examining the evidence in a light most favorable to the opposing party. (Code Civ. Proc., § 437c; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

Anderson contends the evidence shows Moss was aware of the notice of violation sent to Cap in 2007, including its provision that any development would require a certificate of compliance to demonstrate parcel legality. Anderson argues this put Moss on notice that the parcel might be illegal and that a TDC might be required, a fact he concealed from Anderson. We disagree.

To prove a fraud claim, a plaintiff must show the defendant intentionally suppressed a known material fact the defendant was under a legal duty to disclose. (Civ. Code, §§ 1709, 1710.) Moss argued he had no duty to predict what the California Coastal Commission would do and declared he had no information suggesting the commission would impose a TDC requirement on Anderson's property. On the contrary, in his experience TDC's were rare, and he had never heard of one being imposed on a single family residence development. The burden thus shifted to Anderson to

5

demonstrate the existence of a triable issue of material fact. He failed to do so. The notice of violation sent to Cap in 2007 concerned grading that had occurred on site, not the legality of the parcel itself. The reference in the notice to a certificate of compliance merely set forth generally applicable procedures by which a property owner must demonstrate the legality of the parcel. It did not suggest the Malibu lot was illegal.

Anderson contends Moss negligently breached his unwaivable duty to investigate and disclose material facts affecting the Malibu lot, specifically to research the assessor's map, and had he done so he would have noticed the dotted line around the property's boundary, which would have put him on notice that the 1956 subdivision was illegal. We disagree.

To prevail on a claim for negligence, a plaintiff must show the defendant owed plaintiff a legal duty of care, breached that duty, and the breach was the cause of plaintiff's damages. Whether a duty existed is a question of law to be determined by the court. (*Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 755.)

A residential real estate agent owes statutory duties to conduct a reasonable visual inspection of property and investigate all material facts affecting its value and desirability. (Civ. Code, § 2079(a).) An agent has no duty to inspect public records or permits concerning title or use of the property. (Civ. Code, § 2079.3.) An agent representing both the buyer and seller in a transaction owes the same duty to both parties. (Civ. Code, § 2079.16.) The agent's duties do not relieve buyers and sellers from the duty to protect their own interests by consulting professionals and "carefully read[ing] all agreements to assure that they adequately express [the parties'] understanding of the transaction." (Civ. Code, § 2079.16, subd. (b).) The agent's duty to inspect does not extend beyond that set forth Civil Code section 2079.3, and does not include the duty to search public records. (*Padgett v. Phariss* (1997) 54 Cal.App.4th 1270, 1282.) A party and agent may, however, expand the scope of the agent's duties by agreement at any time prior to performance of the contract. (Civ. Code, §§ 2079.20, 2079.23.)

Moss owed no duty to investigate and thereby discover facts that might cause the California Coastal Commission to impose a TDC requirement. He therefore owed no

6

duty to research the assessor's map of the Malibu lot or to disclose to Anderson that the map indicated past subdivisions had been illegal. The parties did not expand the scope of Moss's duties in their agreement, on the contrary they confirmed the statutory limitations on them.

Anderson argues the trial court improperly disregarded the declarations of his experts, who opined that every real estate agent knows subdivision in Malibu has historically been problematic and that the assessor's maps clearly demonstrate parcel illegality by outlining boundaries with dotted lines. The argument is without merit.

In ruling on a motion for summary judgment, a trial court may not weigh the evidence, evaluate its credibility, or grant summary judgment based on its opinion on the plausibility of the claim. (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840.) But whether a duty exists is a matter of law for the court to determine; it may not be established by expert testimony. (*Carleton v. Tortosa*, *supra*, 14 Cal.App.4th at p. 755.) In *Carleton*, an investor hired a real estate agent to represent him in the purchase of two residential properties. The investor signed an agreement disclaiming the agent's duty to give tax advice. (*Id.* at p. 750.) The investor later incurred a tax liability and sued his agent for negligence and breach of duty. (*Ibid.*) He offered the testimony of other real estate professionals to support his allegation that the agent was under a legal duty to investigate tax matters, but the trial court sustained the agents objections to the testimony. (*Id.* at p. 755.) The Third Appellate District affirmed, holding that "expert testimony is incompetent on the predicate question whether the duty exists" because whether a legal duty exists is a question of law for the court to determine. (*Ibid.*)

Similarly here, plaintiff's experts opined that an experienced or even competent real estate agent in the community would know that historically, subdivision in Malibu was often illegal, a fact clearly reflected in current assessor maps. The point is irrelevant. The issue concerns the extent of the agent's *legal* duties, which derive from statute and the parties' agreement, not from best trade practices. The trial court therefore properly sustained Anderson's objections to the experts' declarations.

**DISPOSITION**

The judgment is affirmed.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED.


                                                CHANEY, J.


We concur:



ROTHSCHILD, P. J.



MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.