[No. B133105. Second Dist., Div. Five. July 19, 2000.]

PARICHEHR ASSILZADEH, Plaintiff and Appellant, v. CALIFORNIA FEDERAL BANK, FSB, et al., Defendants and Respondents.

## COUNSEL

Ezer, Williamson, Fischbach & Brown, Mitchel J. Ezer and Joseph S. Fischbach for Plaintiff and Appellant.

Arter & Hadden and Andrea Y. Slade for Defendant and Respondent California Federal Bank, FSB.

Loeterman, Shulkin & Kraemer and Samuel H. Kraemer for Defendants and Respondents FSR Brokerage, Inc., doing business as Fred Sands Realtors and Kyle Grasso.

## OPINION

**WEISMAN, J.**[*]—After a successful credit bid at a nonjudicial foreclosure sale of a condominium unit in a high-rise condominium project located on Wilshire Boulevard in Los Angeles (the unit), codefendant California Federal Bank, FSB (California Federal) entered into an exclusive authorization and right to sell agreement (Listing Agreement) with codefendant FSR Brokerage, Inc., doing business as Fred Sands Realtors and Fred Sands Estates (Sands), to market and sell the unit. Plaintiff Parichehr Assilzadeh (Assilzadeh), who was a tenant living in another unit in the same condominium building, was interested in purchasing the particular unit owned by California Federal and being marketed by Sands. Assilzadeh made an offer to purchase the unit through codefendant Kyle Grasso (Grasso), who was a real estate agent employed by Sands. In presenting the offer and handling the transaction, Grasso and his employer Sands acted in the capacity of dual agents,[1] representing both the seller and the buyer. Before the close of escrow, California Federal and Sands, through Grasso, disclosed in writing to Assilzadeh that the buyer should be aware that the homeowners' association of the condominium project where the unit was located had filed a lawsuit against the developer for construction defects and that the suit had recently been settled for $5.1 million. After the close of escrow, Assilzadeh's request to the homeowners' association for permission to install marble flooring in her unit was denied because the floor of her unit could not support the weight of the marble due to defective construction. Assilzadeh then filed suit against California Federal, Sands, and Grasso, seeking to rescind the sale and obtain restitution as to California Federal and asking for damages against Sands and Grasso for fraudulent concealment, negligence and breach of fiduciary duty based primarily on their failure to disclose in detail all of the specific defects alleged in the construction defect lawsuit.

The trial court granted summary judgment in favor of codefendants California Federal, Sands, and Grasso, ruling that the disclosure of the existence of the lawsuit the homeowners' association had filed against the developer satisfied their duty of disclosure as a matter of law. Assilzadeh

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]A "dual agent" is defined in Civil Code section 2079.13, subdivision (d), which provides that the term "dual agent" means "an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction."

appeals from the resulting judgment. We must therefore decide the disclosure duties of California Federal as the seller, and of Sands and Grasso acting in the capacity of a dual agent. As we discuss below, we agree with the trial court that disclosure of the existence of the lawsuit satisfied the disclosure duties imposed on each codefendant under the circumstances of the instant case, and we therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

California Federal acquired title to the unit in January 1996 after a successful credit bid at a nonjudicial foreclosure sale. In April 1996, California Federal took possession of the unit and then on June 12, 1996, entered into an exclusive listing agreement with Sands as its exclusive real estate broker to market and sell the unit. Prior to entering into the listing agreement with California Federal, Sands had become aware that the homeowners' association for the high-rise condominium building in which the unit was located had filed an action against the building's developer for construction defects and that the action was settled for $5.1 million.

Assilzadeh, who had been living in a different leased unit in the same building with her son Amin Assilzadeh (Amin) since at least 1995, made an offer to purchase the unit that California Federal was offering to sell. Because Assilzadeh does not speak English, her son Amin acted on her behalf throughout the entire transaction. The offer was made through Grasso with the understanding that Grasso, acting on behalf of Sands, was acting as a dual agent representing both Assilzadeh and California Federal.[2]

In response to Assilzadeh's offer, California Federal made a counteroffer, which was followed by a series of counteroffers culminating in an acceptance of terms by both buyer and seller on June 25, 1996. The final written counteroffer that formed the basis for the sale agreement provided the following: "Buyer to be aware that property was acquired through foreclosure and Seller is exempt from providing a property disclosure statement . . . . No warranties expressed or implied are included in this sale. Subject property is being sold in its present 'As Is' condition. Buyer will satisfy himself/herself as to the condition of said property, and their requirement regarding permitted and non-permitted areas of the subject property."

During escrow, Assilzadeh signed an amendment to the purchase agreement that notified her that California Federal had acquired the unit by

[2]The real estate purchase contract (offer) dated June 4, 1996, submitted by Grasso on behalf of Assilzadeh, expressly confirms that Sands and Grasso were acting as agents for "both the Buyer and Seller." Civil Code section 2079.16 requires written confirmation of a dual agent relationship to be contained in the purchase or sale contract or in a separate writing.

foreclosure and thus it had little information about the unit as it was not the owner-occupant. The amendment also notified Assilzadeh that California Federal was unaware of any latent defects in the unit, including structural conditions, and further provided: "Buyer hereby acknowledges that there has been no representation by the Seller regarding the condition of the Property. . . . [¶] In signing the Statement, the Buyer is assuming the responsibility to personally satisfy himself as to the condition of the Property. Buyer is hereby granted the right to inspect the Property or to obtain inspection reports from qualified experts at his own expense . . . . If such reports reveal any latent defects which are unacceptable to Buyer . . . neither Buyer nor Seller shall have any further liability to the other. Buyer's failure to exercise this right shall constitute a waiver of any claims by Buyer against Seller arising from any disclosed or undisclosed defect."

During the course of escrow, Grasso verbally informed Assilzadeh of the litigation instituted by the homeowners' association against the developer and its settlement. Assilzadeh also received a broker's inspection statement that notified Assilzadeh as follows: "Broker strongly advises Buyer to select professionals with the appropriate qualifications to conduct inspections/investigations of the conditions of all aspects of the property. . . . Buyer should be aware of lawsuit brought by HOA against builder for defects. Lawsuit has been settled for 5.1 million dollars." Moreover, Assilzadeh was aware prior to the close of escrow that any improvements or alterations to the unit required prior submission to and approval by the architectural control committee of the homeowners' association.

Through her son Amin, Assilzadeh inspected the unit in order to establish whether her personal needs, requirements, and preferences could be accommodated. Assilzadeh also hired a professional inspector to inspect the unit. According to a declaration of Amin, prior to the close of escrow he mentioned to Grasso that Assilzadeh would like to replace the existing flooring with marble and was told by Grasso that "there would be no problem." Escrow closed at the end of August 1996. Assilzadeh then purchased marble for her flooring, but when she attempted to have the flooring installed, the homeowners' association informed her that the marble flooring could not be installed. Amin learned that the marble could not be installed because of structural defects affecting the load capabilities of the high-rise building.

Assilzadeh filed suit against California Federal, Sands and Grasso. Her first amended complaint includes a claim for rescission and restitution against California Federal, and separate claims for (1) fraudulent concealment, (2) negligence, and (3) breach of fiduciary duty against Sands and Grasso. The focus of her allegations is that the codefendants failed to

disclose the details of the lawsuit involving the alleged construction defects, including the terms of the settlement of that lawsuit, and also failed to advise her that the defects could adversely affect the value of her unit. She further alleges in her claims against Sands and Grasso that she told Grasso prior to the close of escrow that she intended to install marble flooring, and that he breached his fiduciary duty in failing to adequately investigate whether she would be allowed by the architectural committee to install the type of marble she ultimately purchased and then failing to disclose to her that such marble could not be installed. Assilzadeh claims damages resulting from (1) capital improvements that will have to be made to the unit, (2) the reduction in the unit's value due to the inability to install marble flooring, and (3) the disclosures that will have to be made be to subsequent buyers.

The trial court granted motions for summary judgment in favor of codefendants California Federal, Sands, and Grasso, ruling that all codefendants had fully satisfied their duties of disclosure by informing Assilzadeh of the existence of the construction defect litigation and its settlement. The court ruled that once she was informed of the suit, Assilzadeh had an independent duty to investigate and inquire about the suit's details. Assilzadeh has timely appealed from the entry of the summary judgment.

## DISCUSSION

### Standard of Review Relating to a Summary Judgment

■ "After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. [Citation.] The moving party bears the burden of establishing, by declarations and evidence, a complete defense to plaintiff's action or the absence of an essential element of plaintiff's case. [Citations.] The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial. [Citations.] [¶] When the defendant, as the moving party, makes that showing, the burden of proof shifts to the plaintiff, as the opposing party, to show, by responsive separate statement and admissible evidence, that triable issues of fact exist. . . . [¶] As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing establishes facts that negate the opponent's claim and justify a judgment in the moving party's favor; and, if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1543-1544 [76 Cal.Rptr.2d 101].)

■ "Because a summary judgment denies the adverse party a trial, it should be granted with caution. [Citation.] Declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party. The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or in inferences reasonably deducible from the evidence, which raise a triable issue of material fact. [Citation.] If, in deciding this appeal, we find there is no issue of material fact, we affirm the summary judgment if it is correct on any legal theory applicable to this case, whether or not that theory was adopted by the trial court, and whether it was raised by the [defendant] in the trial court or first addressed on appeal. [Citation.]" (*Oliver v. County of Los Angeles* (1998) 66 Cal.App.4th 1397, 1403 [78 Cal.Rptr.2d 641].)

*California Federal's Motion for Summary Judgment*

■ The only cause of action alleged in the complaint against California Federal is for rescission. Breach of a seller's duty of disclosure is grounds for rescission. (*Shapiro v. Sutherland, supra*, 64 Cal.App.4th at p. 1544.) Assilzadeh contends that the trial court erred because triable issues of material fact exist as to whether California Federal breached a duty by failing to disclose all details of the construction defect litigation, including any potential adverse consequences that might cause the value of the units to be reduced in the future. We therefore review the extent of California Federal's duty to disclose concerning the construction defects under (1) statutory disclosure requirements, (2) common law disclosure requirements, and (3) contractual disclosure requirements.

### 1. Statutory Duty of Disclosure

Article 1.5 of the Civil Code,[3] which includes sections 1102 through 1102.15, sets forth disclosures that must be made by the seller in the transfer of residential property. Section 1102.2, subdivision (c), makes clear, however, that "transfers by a . . . beneficiary under a deed of trust who has acquired the real property at a sale conducted pursuant to a power of sale under a . . . deed of trust" are exempt from the disclosure requirements of article 1.5. Therefore, because California Federal acquired the unit by nonjudicial foreclosure, it was exempt from the disclosure requirements of article 1.5.

Indeed, California Federal expressly notified Assilzadeh that the unit was "acquired through foreclosure and Seller is exempt from providing a property disclosure statement" and also that the unit "was acquired by the Seller

---

[3]All further statutory references are to the Civil Code, unless otherwise indicated.

pursuant to the lender foreclosure action. As a consequence, the Seller was not an owner-occupant and its information concerning the condition of the [unit] is limited." Assilzadeh acknowledged in writing that "the Buyer is assuming the responsibility to personally satisfy himself as to the condition of the [p]roperty," that the buyer had the right to cancel the sale if defects were revealed by an inspection, and that the "Buyer's failure to exercise this right shall constitute a waiver of any claims by Buyer against Seller arising from any disclosed or undisclosed defect."

It is thus clear that all parties knew that the unit was acquired by California Federal through foreclosure, and that its statutory duty of disclosure was limited. Consequently, to the extent that summary judgment was granted in favor of California Federal based upon its lack of a statutory duty of disclosure, we conclude that it was properly granted.

## 2. *Common Law Duty of Disclosure*

As California Federal and Assilzadeh both point out, the exemption from statutory disclosure provided by section 1102.2, subdivision (c), does not relieve a seller of its common law duty of disclosure. (*Karoutas v. HomeFed Bank* (1991) 232.Cal.App.3d 767, 773-774 [283 Cal.Rptr. 809].)

"In the context of a real estate transaction, '[i]t is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]' [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.] A breach of this duty of disclosure will give rise to a cause of action for both rescission and damages. [Citation.]" (*Shapiro v. Sutherland, supra,* 64 Cal.App.4th at p. 1544; see also *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 735 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].) The seller or his or her agent must have actual knowledge in order to be liable for failing to disclose a material fact. (See *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1055-1056 [37 Cal.Rptr.2d 501].)[4]

California Federal's evidence in support of its motion for summary judgment showed that it disclosed to Assilzadeh that it had acquired the unit

---

[4]The escrow instructions executed by California Federal also obligated it "to disclose adverse material facts which are known to seller and to make other disclosures required by law." This contractual duty of disclosure is no different than the obligation imposed by case law, and therefore added nothing to California Federal's duty of disclosure.

by foreclosure and that it had little information about the unit as it was not the owner-occupant. California Federal, through Sands and Grasso, disclosed that the homeowners' association had filed a lawsuit for construction defects and that the suit had been settled for $5.1 million on May 1, 1996. Assilzadeh argued in her opposition to the motion for summary judgment that "Sands did not obtain a copy of the lawsuit . . . and did not investigate the nature of the suit." Assilzadeh failed to present any evidence that California Federal or Sands knew the actual contents of the complaint filed in the construction defect litigation or had ever seen a copy of the court file or any documents in the file. Thus, no duty existed on the part of California Federal to disclose all of the details of the suit since they were unaware of all of the details. We conclude that California Federal satisfied its duty of disclosure by informing Assilzadeh of the existence of the construction defect litigation and its settlement. At that point the details of the suit were certainly within the diligent attention of the buyer, who could have examined the file in its entirety to learn all the details of the suit and its settlement.

Assilzadeh nevertheless asserts that California Federal knew that Sands had previously given California Federal a "Brokers Price Opinion" in which Sands informed California Federal that "[t]he building has had many problems, although the extent is still not known. The lawsuit spanning the past couple of years has now ended with a sizable settlement. We feel this settlement will enhance the value of the units . . . . [¶] Since the settlement of the lawsuit it is conceivable that outside lenders will begin lending again on these units. This will not only help to facilitate the transactions but also create a greater level of confidence in the building. The disclosure required due to the lawsuit may present a sizable problem with many buyers, even with the lawsuit settled. The reason being that some issues are still outstanding and the monies received from the settlement may not cover the repairs (i.e. the plumbing and roof). Should some of the problems come to fruition it is conceivable that the values could drop by as much as 70%-80%."[5] Assilzadeh argues that California Federal at least had a duty to disclose this opinion since it was a fact materially affecting the value or desirability of the property and its failure to do so prevents summary judgment. We disagree.

Statements concerning the value of property are generally deemed to be expressions of personal opinion and not actionable representations of fact

---

[5]The Broker's Price Opinion was attached as an exhibit to the declaration of Assilzadeh's counsel filed in opposition to California Federal's summary judgment motion. California Federal objected to this evidence arguing that it was inadmissible hearsay because it was "unauthenticated." The trial court overruled the objection, ruling that it was admissible because it was a document produced by California Federal from its files in response to Assilzadeh's discovery requests. California Federal reasserts its objection here and contends the trial court erred. Since consideration of the Broker's Price Opinion does not affect the propriety of summary judgment as against California Federal, we need not decide whether the trial court's evidentiary ruling was erroneous.

upon which the other party can rely. (1 Miller & Starr, Cal. Real Estate (2d ed. 1989) Contract Law, § 1:112, p. 360.) Conclusions as to how the legal or practical ramifications of disclosed facts adversely impact value are not facts subject to a duty of disclosure. (See *Pagano v. Krohn* (1997) 60 Cal.App.4th 1, 7 [70 Cal.Rptr.2d 1]; see also *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 609 [43 Cal.Rptr.2d 399] ["The legal ramifications of the factual nature of realty . . . and a conclusion as to how they may adversely impact value, is not a 'fact' subject to required disclosure."], disapproved on another point in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, fn. 5 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

Considered as a whole, the statements in the Broker's Price Opinion are simply opinions relating to possible future prices given by Sands to California Federal while acting as its agent. We reject Assilzadeh's characterization of the statements in the opinion as material facts about the unit that require disclosure to a buyer. We view the opinion of Sands as constituting no more than a vague and general speculation concerning the possible market value of the unit at some unspecified future time depending on factors that may never exist. The opinion does not constitute an additional fact about the construction defect litigation that required disclosure.

In short, the evidence presented by California Federal showed that as a foreclosing lender it, and its agent, disclosed the fact that there had been construction defect litigation concerning the building and that the litigation had been settled. We conclude that Assilzadeh failed to raise any triable issue of material fact regarding her allegation that California Federal breached its common law duty of disclosure. Thus, the trial court properly granted the motion for summary judgment.

*The Motion for Summary Judgment Filed by Sands and Grasso*

The causes of action alleged in the amended complaint against Sands and Grasso are for fraudulent concealment, negligence, and breach of fiduciary duty. On appeal, Assilzadeh argues that Sands and Grasso violated the statutory duty of disclosure to a buyer under section 2079, and also breached the fiduciary duty they owed to the buyer in their capacity as a dual agent.

1. *Duty of Disclosure Under Section 2079*

The duty of care of a seller's broker, including the duty to disclose facts about the property, has been codified in sections 2079 through 2079.6.

Section 2079, subdivision (a) provides, in relevant part: "It is the duty of a real estate broker . . . to a prospective purchaser of residential real property . . . to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that an investigation would reveal, if that broker has a written contract with the seller to find or obtain a buyer . . . ." In section 2079.12, the Legislature expressly provided that the statutory duty of care, including the duty of disclosure contained in section 2079, "is declarative of the common law regarding this duty." The Legislative Counsel's Digest to Assembly Bill No. 2935 (1995-1996 Reg. Sess.), which enacted section 2079.12, states that by making the statutory duty of care, including the duty of disclosure, declarative of the common law, the Legislature intended the statutory duty to "preempt the common law regarding this duty." (Stats. 1996, ch. 476, § 1.)

The inspection required by section 2079 "does not include or involve an inspection of areas that are reasonably and normally inaccessible to such an inspection, nor an affirmative inspection of areas off the site of the subject property or public records or permits concerning the title or use of the property, and, if the property comprises a unit in . . . a condominium . . . does not include an inspection of more than the unit offered for sale . . . ." (§ 2079.3.) Moreover, section 2079.5 makes clear that "[n]othing in this article relieves a buyer or prospective buyer of the duty to exercise reasonable care to protect himself or herself, including those facts which are known to or within the diligent attention and observation of the buyer or prospective buyer." It is thus clear that under this statutory scheme, "once the sellers and their agent make the required disclosures, it is incumbent upon the potential purchasers to investigate and make an informed decision based thereon." (*Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 644 [67 Cal.Rptr.2d 380].)

In support of their motion for summary judgment, Sands and Grasso presented evidence that Grasso conducted a "reasonably competent and diligent visual inspection of the Property" and that at no time prior to the close of escrow did they have any of the documents pertaining to the litigation.[6] The admissible evidence presented by Assilzadeh and considered by the trial court did not dispute the evidence presented by Sands and Grasso

---

[6]Assilzadeh objected to this evidence. Nevertheless, because she failed to obtain evidentiary rulings on these objections, they are waived and the evidence may be considered. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

on this point. We thus conclude that the material facts actually known to Sands and Grasso were that a lawsuit had been filed and settled relating to alleged construction defect litigation, and that Sands and Grasso satisfied their statutory duty of inspection and disclosure under sections 2079 and 2079.3 when they disclosed the existence of the lawsuit to Assilzadeh.

## 2. Fiduciary Duty of a Dual Agent

In California, a broker who has signed a contract to act as a sales agent for the seller can also represent the buyer and act in the capacity of a dual agent in order to complete the sale and purchase of the property. Arguably, when acting as a dual agent, a broker could still be limited to the duty of disclosure to the buyer set forth in section 2079 even though the broker is also representing the buyer, since the broker "has a written contract with the seller to find or obtain a buyer" as provided by section 2079, subdivision (a). The capacity of a dual agent, however, appears to carry its own defined affirmative obligations toward both the seller and the buyer. These obligations are set out in section 2079.16, which provides that disclosure must be made to a client that a broker acting as a dual agent has a fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the seller or the buyer, and a duty of honest and fair dealing and good faith toward the buyer and the seller, and also must diligently exercise reasonable care and skill in performing the duties of an agent. In addition, section 2079.16 provides that a dual agent has a duty "to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties." Section 2079.16 also states that the aforementioned duties of a dual agent "do not relieve a Seller or Buyer from the responsibility to protect his or her own interests."

We believe that a dual agent has fiduciary duties to both the buyer and seller. In *Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 21, 25-26 [73 Cal.Rptr.2d 784], the court discussed the fiduciary duties owed by a broker who contracts exclusively to represent a purchaser of real property. While the broker in the instant case did not have an exclusive contract to represent the purchaser and instead acted in the capacity of a dual agent, we believe the discussion is informative as to the scope of fiduciary duty. The court in *Field* stated: "[A] broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty. [Citations.] 'The broker as a fiduciary has a duty to learn the material facts that may affect the principal's decision. He is hired for his professional knowledge and skill; he is expected to perform the necessary

research and investigation in order to know those important matters that will affect the principal's decision, and he has a duty to counsel and advise the principal regarding the propriety and ramifications of the decision. The agent's duty to disclose material information to the principal includes the duty to disclose reasonably obtainable material information. [¶] . . . [¶] The facts that a broker must learn, and the advice and counsel required of the broker, depend on the facts of each transaction, the knowledge and the experience of the principal, the questions asked by the principal, and the nature of the property and the terms of sale. The broker must place himself in the position of the principal and ask himself the type of information required for the principal to make a well-informed decision. This obligation requires investigation of facts not known to the agent and disclosure of all material facts that might reasonably be discovered.' [Citation.] [¶] Thus, depending on the circumstances, a broker's fiduciary duty may be much broader than the duty to visually inspect and may include a duty to inspect public records or permits concerning title or use of the property, a duty which is expressly excluded from section 2079." (*Id.* at pp. 25-26.)

■ Breach of a real estate agent's fiduciary duty to his or her client may constitute negligence or fraud, depending on the circumstances of the case. (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563 [29 Cal.Rptr.2d 463].) Additionally, a real estate agent, as a fiduciary, is also " '. . . liable to his principal for constructive fraud even though his conduct is not actually fraudulent. Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.' [Citation.] [¶] '[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent.' [Citation.]" (*Id.* at p. 562, italics omitted.)

It is clear, therefore, that whether a fiduciary duty has been breached, and whether a statement constitutes constructive or actual fraud, depends on the facts and circumstances of each case. ■ In the present case, Assilzadeh was informed that the seller did not occupy the unit, that the seller had no actual knowledge of the condition of the unit, that the buyer should conduct her own investigation of the property, that a lawsuit relating to construction

defects had been filed and recently settled, and that any improvements or alterations had to receive approval of the architectural committee.

Citing *Padgett v. Phariss* (1997) 54 Cal.App.4th 1270 [63 Cal.Rptr.2d 373], Sands and Grasso argue that under the facts of the instant case, their fiduciary duty toward Assilzadeh was fulfilled by disclosure of the existence of the construction defect litigation. In *Padgett*, the real estate agents did not know and therefore did not disclose to the buyer that there was soil subsidence in the common area and that the homeowners association had filed constructive defect litigation against the developer. The buyer discovered the litigation after escrow closed and sued, claiming that both the seller's and buyer's agents failed to disclose material facts and breached their fiduciary duty. The plaintiff presented expert evidence that a buyer's real estate agent has a fiduciary duty of care that includes insuring that the buyer receives information as to "whether there is any pending, past, or future litigation at the development." (*Id.* at p. 1278.) The trial court granted summary judgment ruling that the agents had no common law or statutory duty to seek out and discover the litigation and the appellate court affirmed. (*Id.* at p. 1286.) The appellate court recognized that the common law fiduciary duties of a buyer's agent exceeded the statutory duty of disclosure of a seller's agent to a buyer under section 2079, but found on the facts of the case that there was no indication of any litigation and no duty to inquire further without such indication. (54 Cal.App.4th at p. 1286.) From the language of the court, it appears that had a duty to disclose the litigation been found, the disclosure of the existence of the lawsuit would have sufficed. The *Padgett* court did not have to reach this issue, which confronts us in the instant case.

Taking into account all the facts of the instant case, we conclude that the fiduciary duty of Sands and Grasso as a dual agent, representing both the buyer and seller, were fulfilled when the buyer was informed that a construction defect lawsuit had been filed and settled. At that point the buyer should have investigated further and, if necessary, should have hired an attorney for advice on the legal aspects of the lawsuit and settlement. The facts that there was a lawsuit and that there were thus alleged defects were adequately disclosed, and neither Sands nor Grasso was required to read and analyze the legal documents located in the court file. The material fact that had to be disclosed was the fact that there was a lawsuit for defects, not each and every allegation contained within the court file. Indeed, some of the alleged defects mentioned in the complaint may not have been provable at trial. The case was settled without trial, and neither Sands nor Grasso would have had any way of knowing which alleged defects were true or the actual extent or effect of the alleged defects. Their duty was to disclose the existence of the

lawsuit to put the buyer on notice of alleged defects, and they fulfilled that duty.

Assilzadeh similarly asserts that Sands and Grasso had a duty to disclose that the defects and lawsuit could cause the value of the property to be reduced in the future if the settlement did not allow all the problems to be fixed. The fact of the lawsuit and settlement was disclosed, and the buyer was thus on notice that any defects not repaired would obviously have an impact on the value of the property. (*Pagano v. Krohn, supra,* 60 Cal.App.4th at p. 12 [buyer's agent under no duty to inform a buyer that a lawsuit over defects might adversely affect the value of the property].)

Finally, Assilzadeh argues that constructive fraud occurred when Grasso allegedly expressed the opinion that installing marble would present no problem. We find that Assilzadeh was made aware that the architectural committee had to approve the installation, was also notified that a lawsuit relating to defects had been filed and settled, and understood that the unit was being purchased in "as-is" condition, which placed on her a duty to investigate to determine the actual condition of the property. In this particular factual context, Assilzadeh had a duty to investigate the nature of the lawsuit as well as the terms of the settlement, and to contact the architectural committee to see whether any of the defects involved in the lawsuit would affect her plans for alteration of her unit, and could not reasonably rely on the obviously unverified and speculative[7] opinion of Grasso even if such an opinion was actually stated. (*Pagano v. Krohn, supra,* 60 Cal.App.4th at pp. 11-12 [holding (1) buyer's agent is not required to verify information if the buyer understands the information is unverified; and (2) buyers have their own duty to ascertain the exact scope of claimed defects involved in litigation once the litigation has been disclosed and where the complaint against the developer is a matter of public record].)

We therefore conclude the trial court correctly determined that no triable issues of material fact existed and that the motion for summary judgment on behalf of Sands and Grasso was properly granted.

---

[7]At the time the statement was allegedly made by Grasso that the installation of marble would be "no problem," Amin was aware that no plans for the installation had been presented to the architectural committee, and that no approval had been obtained. Also, the statement by Amin to Grasso that preceded Grasso's comment was simply that Assilzadeh was thinking about replacing the existing flooring with marble. In no way was it ever indicated that this was material to the completion of the sale or something that played an important role in the decision to acquire the property.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants.

Turner, P. J., and Grignon, J., concurred.