Filed 11/8/13  Pryor v. Nelson Shelton & Assocs. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WILL M. PRYOR, JR.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>NELSON SHELTON & ASSOCIATES,<br><br>Defendant and Respondent. | B243989<br><br>(Los Angeles County<br>Super. Ct. No. SC114123) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Richard A. Stone, Judge.  Reversed with directions.

Omer Salik for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House; and Glenn E. Stevens for Defendant and Respondent.

# I.  INTRODUCTION

Plaintiff, William M. Pryor, appeals from a judgment following a trial court's order sustaining a demurrer without leave to amend.  Plaintiff sued defendant, Nelson Shelton & Associates, for contract and implied covenant breach and negligence.  On appeal, plaintiff argues he has pled a claim for fiduciary duty breach even though the individual counts are denominated otherwise.  Plaintiff alleges defendant was aware one of its agents engaged in fraudulent activity but failed to notify him which caused him harm.  Defendant demurred, arguing plaintiff's claim was barred as the statute of limitations elapsed.  Defendant argued plaintiff knew of the agent's fraudulent activity by 2006 but did not file his lawsuit until 2011, after the four-year statute of limitations.  Plaintiff alleges he did not learn defendant knew of its agent's fraud until 2008.  We reverse the order and remand.

# II.  BACKGROUND

## A.  Plaintiff's Allegations

Plaintiff filed his action on September 14, 2011.  On February 29, 2012, plaintiff filed his first amended complaint, the operative pleading.  Plaintiff alleges the following.

Plaintiff was the co-owner of a residential property located at 14739 Valleyheart Drive, in Sherman Oaks, California ("the property").  Defendant is a licensed real estate company qualified to do business in California.  On May 23, 2005, plaintiff and defendant entered into a listing agreement from May through December 2005.  Parties to the agreement were also Ronald Nelson, who represented himself as an owner of defendant, and Martha Panella, a senior broker.  On May 23, 2005, defendant, Mr. Nelson, and Ms. Panella introduced plaintiff to a contractor who would perform $60,000 worth of renovations to increase the selling price of the property.  On June 1, 2005, defendant presented an offer from a couple for the price of $1.9 million.  Defendant was

2

the selling agent. Plaintiff was advised the buyers wanted him to provide $150,000 in improvements. Plaintiff was told about the need for improvements by Mr. Nelson and Ms. Panella.

In July 2005, defendant, Mr. Nelson, and Ms. Panella presented another offer for almost $500,000. Characterized in the first amended complaint as an investment offer, it entailed a return of $5 million and the purchase and development of another property. Around July 2005, defendant and Mr. Nelson opened an escrow named The Lofts at Martel Limited Liability Company. Plaintiff was the chief executive officer. Over $320,000 was to be deposited in the escrow. On September 22, 2005, plaintiff was advised Mr. Nelson was forming another brokerage company in order to pursue real estate investments with clients. At this time, plaintiff was unaware of any "firing," fraud, and wrongdoing by defendants, Mr. Nelson or Ms. Panella. Plaintiff believed the new entity was devised by defendant for investment and "REO" listings. Plaintiff believed defendant was doing business as Duggan/Nelson & Associates. Plaintiff believed Duggan Nelson & Associates was formed for investment and "REO" listings.

On October 1, 2005, defendant and Mr. Nelson drafted a letter for plaintiff to send to Mark Shelton. The letter stated plaintiff wanted to have the property listed with Mr. Nelson's new company, Duggan/Nelson & Associates. Defendant never made any efforts to advise plaintiff anything illegal was occurring. At this time, plaintiff believed Mr. Nelson was defendant's owner and agent and Ms. Panella was the senior broker.

Mr. Nelson offered to buy the property for $1,595,000. Plaintiff accepted the offer with some change in terms. Mr. Nelson did not open an escrow, however, but moved himself into the property. In June 2006, Mr. Nelson issued four forged and counterfeit checks into escrow worth approximately $86,000. Mr. Nelson was later evicted and charged with four felony counts.

Around March 2008, plaintiff filed a complaint with the Department of Real Estate (the department). The department at this time believed Mr. Nelson was defendant's owner. The department advised it had no record of Mr. Nelson's employment termination. On May 31, 2008, "defendant" was subpoenaed as a witness

against Mr. Nelson. At this time, in March 2008, plaintiff first became aware that defendant had fired Mr. Nelson. Further, at this time plaintiff first learned defendant was in fact aware of Mr. Nelson's fraudulent acts as early as July 2005. Defendant had informed the department Mr. Nelson had been terminated. Mr. Nelson was convicted and his sentence included $330,000 in restitution. The property was eventually foreclosed upon.

On December 1, 2008, the department sent a copy of its investigation report and defendant's statement. In the report, dated November 22, 2008, defendant advised the department Mr. Nelson had been terminated. But the department's report relates that defendant indicated it had not discovered Mr. Nelson's fraud until after he was terminated. Plaintiff alleges he did not uncover the nature of the fraud, "involvements" and concealment until around December 1, 2008. Plaintiff alleges causes of action for: contract breach; good faith and fair dealing implied covenant breach; and negligence. As noted, on appeal he argues he stated a claim for fiduciary duty breach.

## B. Defendant's Demurrer

On April 5, 2012, defendant filed a demurrer. Defendant argued plaintiff was aware of Mr. Nelson's wrongdoing on September 22, 2005. In his original complaint, plaintiff had alleged defendant breached its contract on September 22, 2005. Plaintiff later filed a criminal complaint on July 12, 2006. Defendant argued under either September 22, 2005, or July 12, 2006, plaintiff's complaint, filed September 14, 2011, missed the four-year statute of limitations for a written agreement breach. Defendant contended plaintiff's cause of action for breach of the covenant of good faith and fair dealing and general negligence likewise failed. Defendant also asserted plaintiff's pleadings were ambiguous and uncertain in violation of Code of Civil Procedure section 430.10, subdivision (f).

4

C. Trial Court's Order

On May 10, 2012, the demurrer hearing was held. The trial court concluded plaintiff's causes of actions should be dismissed as barred by the statute of limitations. The trial court relied upon an exhibit submitted by Commerce Escrow, a defendant which had filed its own demurrer. In the trial court's tentative ruling, it found, "Plaintiff was aware of his injury as of 10-20-06, when he filed a formal administrative complaint with the [Department] of Corporations against Commerce Escrow." Defendant sent notice of the trial court's order sustaining the demurrer on May 18, 2012. Plaintiff subsequently appealed.

III.  DISCUSSION

A.  Overview

The trial court's order sustaining defendant's demurrer without leave to amend is an appealable judgment. (Code Civ. Proc., § 904.1, subd. (a)(1); *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 278.) Our Supreme Court has held: "'The rules by which the sufficiency of a complaint is tested against a general demurrer are well settled. We not only treat the demurrer as admitting all material facts properly pleaded, but also "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . . [Citation.]" [Citation.] [¶] If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the factual allegations of the complaint are adequate to state a cause of action under any legal theory . . . ." [Citations.]'" (*Yanting Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370; accord *Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1454.) We may also consider matters which can be judicially noticed.

5

(*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  We review de novo an order sustaining a demurrer.  (*Barker v. Garza*, *supra*, 218 Cal.App.4th at p. 1454; *Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75.)

Plaintiff argues defendant breached its fiduciary duty to plaintiff by failing to notify him of Mr. Nelson's termination for fraud.  The fiduciary duty derived from defendant and plaintiff's listing agreement.  Plaintiff asserts defendant breached its fiduciary duty on September 22, 2005.  The alleged fiduciary duty breach occurred when defendant fired Mr. Nelson for fraud but did not inform plaintiff.  However, plaintiff argues he did not discover defendant's alleged wrongdoing until December 1, 2008, when the department issued its investigation report.

## B.  Statute Of Limitations

Plaintiff argues the trial court erred by finding the statute of limitations had lapsed.  Plaintiff contends he stated a valid claim for breach of fiduciary duty by constructive fraud.  We have held regarding constructive fraud:  "[A] real estate agent, as a fiduciary, is also "". . . liable to his principal for constructive fraud even though his conduct is not actually fraudulent.  Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship."  [Citation.]  [¶]  "[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent.  Most acts by an agent in breach of his fiduciary duties constitute constructive fraud.  The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud.  Also, a careless misstatement may constitute constructive fraud even though there is no fraudulent intent." [Citation.]'  [Citation.]"  (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 415; see Civ. Code, § 1573.)

6

The statute of limitations for a breach of written agreement is four years. (Code Civ. Proc., § 337; see *Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 532 [holding negligent performance of written contract is subject to 4-year statute of limitations].) Our Supreme Court held: "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises . . . .' [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements . . . ." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397; see *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 [same].)

Our Supreme Court held: "An exception to the general rule for defining the accrual of a cause of action — indeed, the 'most important' one — is the discovery rule. [Citation.] It may be expressed by the Legislature or implied by the courts. [Citation.] It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at p. 397; see *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [same].) The discovery rule is as follows: "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. . . . [¶] . . . [¶] [I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at pp. 807- 809; see *Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1192 [same]; *Quarry v. Doe I* (2012) 53 Cal.4th 945, 960 [same].)

7

The trial court found plaintiff was aware of defendant's potential wrongdoing when he filed a complaint with the Department of Corporations. We take judicial notice of plaintiff's Department of Corporations complaint. (Evid. Code, § 452.) On October 20, 2006, plaintiff filed a Department of Corporations complaint against Commerce Escrow. Plaintiff made the following complaint: "Commerce Escrow, while acting as a neutral agent . . . was negligent and their actions allowed Ronald J. Nelson to commit a fraud. They transferred $320,000 from escrow . . . to a . . . bank account in Ron Nelsons [sic] sole control. Commerce Escrow took no precautions to insure the proper handling of funds deposited and return to depositor. Commerce Escrow was negligent in determing [sic] signatures and never establishing contact with depositor and refused to communicate with other than [Mr. Nelson.]"

Plaintiff argues his Department of Corporations administrative complaint against Commerce Escrow does not demonstrate his knowledge of defendant's wrongdoing. Our Supreme Court held: "[W]e do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at pp. 807-808; *Nelson v. Indevus Pharmaceuticals, Inc.* (2006) 142 Cal.App.4th 1202, 1206.) No doubt, based on the Department of Corporations administrative complaint, plaintiff reasonably suspected Commerce Escrow of wrongdoing against him by October 20, 2006. However, the administrative complaint does not conclusively demonstrate plaintiff should have suspected *defendant* of wrongdoing.

Defendant argues plaintiff realized Mr. Nelson had defrauded him in 2006. That, according to defendant, is when plaintiff knew it had not provided him with information. Defendant contends plaintiff was sufficiently on notice to investigate the circumstances of the fraud to determine who may have contributed to his injury. This argument does not address how plaintiff had a reasonable suspicion that defendant had fired Mr. Nelson. Our colleagues in Division Three of this appellate district held: "The question when a

8

plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 61 quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)  As noted, the fiduciary duty breach claim is premised on defendant firing Mr. Nelson and not informing plaintiff.  There are allegations plaintiff believed Mr. Nelson was an owner of defendant.  Plaintiff first learned on May 31, 2008 defendant had fired Mr. Nelson and was aware of his fraudulent acts since July 2005.  Plaintiff did not uncover the nature of the fraud, involvement, and concealment until the December 1, 2008 department report.  A trier of fact could reasonably find plaintiff would not have discovered defendant fired Mr. Nelson until at earliest May 31, 2008.  Using either May 31, 2008 or December 1, 2008 as the discovery date, plaintiff's complaint would be timely filed.

Defendant's arguments raised in its moving papers are also unpersuasive.  As noted, defendant argued plaintiff's claim accrued either September 22, 2005, when the firing occurred, or July 12, 2006, when plaintiff filed a criminal complaint.  Regarding the September 22, 2005 date, plaintiff alleged that is the date of the breach but not the date when he discovered it.  The July 12, 2006 criminal complaint indicated plaintiff was suspicious of Mr. Nelson.  It does not demonstrate plaintiff was necessarily suspicious of facts related to his cause of action against defendant.  As stated, a trier of fact could find plaintiff acted reasonably because he believed Mr. Nelson was an owner of defendant and received no contrary information until 2008.

## C.  Other Issues

We recognize the amended complaint raises other issues.  However, the sole issue raised by defendant on appeal is the statute of limitations.  The sole ground for the order sustaining the demurrer was the statute of limitations ground.  But the amended complaint's allegations, prepared by plaintiff in pro se, are unclear.  Had other grounds been litigated on appeal by defendant, perhaps the result would have been different.  The

9

ambiguous nature of the amended complaint may lead plaintiff, who is now represented by counsel, to seek leave to file a second amended fiduciary duty breach complaint. On the other hand, the trial court may determine to take action including exercising its authority to strike the amended complaint with leave to amend on incomprehensibility grounds on its own motion. (Code Civ. Proc., § 436, subd. (a); *Coyne v. Krempels* (1950) 36 Cal.2d 257, 262; *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 528.) We express no opinion as to how the trial court should react to any second amended complaint. Our ruling is limited to the statute of limitations ruling and nothing else.

## IV. DISPOSITION

The order sustaining the demurrer and judgment are reversed. Upon remittitur issuance, the trial court may proceed as discussed in part III(C) of this opinion. No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10