Filed 4/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| HIROSHI HORIIKE, | B246606 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC110477) |
| v. | |
| COLDWELL BANKER RESIDENTIAL BROKERAGE COMPANY et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, John H. Reid, Judge.  Reversed and remanded.

Victor N. Pippins and David W. Macey for Plaintiff and Appellant.

Klinedinst PC and Neil Gunny for Defendants and Respondents.

_____

A broker represented both the buyer and the seller in a real property transaction through two different salespersons. The buyer brought several claims against the broker and the salesperson who listed the property for sale, including breach of fiduciary duty. The trial court granted a nonsuit on the claim for breach of fiduciary duty against the salesperson on the ground that the salesperson who listed the property did not have a fiduciary duty to the buyer. The court also instructed the jury that the broker had no liability for breach of fiduciary duty based on the salesperson's acts. The jury returned a verdict in favor of the defense on the remaining causes of action.

The buyer contends that the salesperson had a fiduciary duty equivalent to the duty owed by the broker, and the trial court incorrectly granted the nonsuit and erroneously instructed the jury. We agree. When a broker is the dual agent of both the buyer and the seller in a real property transaction, the salespersons acting under the broker have the same fiduciary duty to the buyer and the seller as the broker. The buyer was prejudiced by the erroneous rulings, because the jury's findings of fact did not resolve the omitted issues concerning breach of fiduciary duty. Therefore, we reverse the judgment and remand for a new trial.

## FACTS

Defendant Chris Cortazzo is a salesperson for defendant Coldwell Banker Residential Brokerage Company (CB). In 2006, the owners of a residential property in Malibu engaged Cortazzo to sell their property. The building permit lists the total square footage of the property as 11,050 square feet, including a single family residence of 9,224 square feet, a guest house of 746 square feet, a garage of 1,080 square feet, and a basement of unspecified area.

Cortazzo listed the property for sale on a multiple listing service (MLS) in September 2006. The listing service provided Cortazzo with public record information for reference, which stated that the living area of the property was 9,434 square feet. The listing that Cortazzo created, however, stated the home "offers approximately 15,000

2

square feet of living areas." Cortazzo prepared a flier for the property which stated it "offers approximately 15,000 square feet of living areas."

In March 2007, a couple made an offer to purchase the property. They asked Cortazzo for verification of the living area square footage. Cortazzo provided a letter from the architect stating the size of the house under a current Malibu building department ordinance was approximately 15,000 square feet. Cortazzo suggested the couple hire a qualified specialist to verify the square footage. The couple requested the certificate of occupancy and the architectural plans, but no architectural plans were available. In the real estate transfer disclosure statement, Cortazzo noted from his visual inspection that adjacent parcels were vacant and subject to development. He repeated his advice to hire a qualified specialist to verify the square footage of the home, stating that the broker did not guarantee or warrant the square footage.

When the couple learned architectural plans were not available, they requested a six-day extension to inspect the property. The sellers refused to grant the extension and the couple cancelled the transaction at the end of March 2007. In July 2007, Cortazzo changed the MLS listing to state that the approximate square footage was "0/O.T.," by which he meant zero square feet and other comments.

Plaintiff Hiroshi Horiike was working with CB salesperson Chizuko Namba to locate a residential property to purchase. Namba saw Cortazzo's listing for the Malibu property and arranged for Cortazzo to show the property to Horiike on November 1, 2007. Cortazzo gave Horiike a copy of the flier stating the property had 15,000 square feet of living areas. Escrow opened on November 9, 2007. Cortazzo sent a copy of the building permit to Namba. Namba provided a copy of the permit to Horiike with other documents.

The parties to the transaction signed a confirmation of the real estate agency relationships as required by Civil Code section 2079.17. The document explained that CB, as the listing agent and the selling agent, was the agent of both the buyer and seller. Cortazzo signed the document as an associate licensee of the listing agent CB. Namba signed the document as an associate licensee of the selling agent CB.

3

Horiike also executed a form required under Civil Code section 2079.16 for the disclosure of three possible real estate agency relationships. First, the form explained the relationship of a seller's agent acting under a listing agreement with the seller. The seller's agent acts as an agent for the seller only and has a fiduciary duty in dealings with the seller. The seller's agent has obligations to both the buyer and the seller to exercise reasonable skill and care, as well as a duty of fair dealing and good faith, and a "duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties."

The second type of relationship, which is not at issue in this case, involves the obligations of an agent acting for the buyer only. An agent acting only for a buyer has a fiduciary duty in dealings with the buyer. A buyer's agent also has obligations to the buyer and seller to exercise reasonable care, deal fairly and in good faith, and disclose material facts.

The third relationship described was an agent representing both the seller and the buyer. "A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer." An agent in a dual agency situation has a fiduciary duty to both the seller and the buyer, as well as the duties to buyer and seller listed in the previous sections.

Horiike signed the disclosure form as the buyer and Cortazzo signed as an associate licensee for the agent CB. In the visual inspection disclosure that Cortazzo provided to Horiike, he noted adjacent vacant lots were subject to building development. He did not add a handwritten note of advice to hire a qualified specialist to verify the square footage of the home, as he had in the previous transaction. Horiike completed the property transaction.

In preparation for work on the property in 2009, Horiike reviewed the building permit. He asked Cortazzo to verify that the property had 15,000 square feet of living areas. Horiike's expert testified at trial that the living areas of the home totaled 11,964

square feet. The defense expert testified the home's living areas totaled 14,186 square feet.

## PROCEDURAL BACKGROUND

On November 23, 2010, Horiike filed a complaint against Cortazzo and CB for intentional and negligent misrepresentation, breach of fiduciary duty, unfair business practices in violation of Business and Professions Code section 17200, and false advertising in violation of Business and Professions Code section 17500. The parties agreed that the claims based on violations of the Business and Professions Code would be determined by the court following the jury trial.

After the presentation of Horiike's case to the jury, Cortazzo moved for nonsuit on the cause of action for breach of fiduciary duty against him. The trial court granted the motion on the ground that Cortazzo had no fiduciary duty to Horiike. Horiike stipulated that he was not seeking recovery for breach of fiduciary duty based on any action by Namba. Therefore, the court instructed the jury that in order to find CB liable for breach of fiduciary duty, the jury had to find some agent of CB other than Namba or Cortazzo had breached a fiduciary duty to Horiike. The court granted Horiike's request to submit an additional cause of action to the jury for intentional concealment against both defendants.

The jury returned a special verdict in favor of Cortazzo and CB. The jury found Cortazzo did not make a false representation of a material fact to Horiike, so there was no intentional misrepresentation. However, the jury made a contrary finding in considering the claim for negligent misrepresentation, finding that Cortazzo had made a false representation of material fact to Horiike. There was no liability for negligent misrepresentation, because the jury found Cortazzo honestly believed, and had reasonable grounds for believing, the representation was true when he made it. The jury found no concealment, because Cortazzo did not intentionally fail to disclose an important or

5

material fact that Horiike did not know and could not reasonably have discovered. Lastly, the jury found that CB did not breach its fiduciary duty to Horiike.

The trial court determined the jury's findings resolved the remaining claims in favor of Cortazzo and CB. Therefore, on October 30, 2012, the court entered judgment in favor of Cortazzo and CB. Horiike filed a motion for a new trial on the ground the verdict was internally inconsistent, which the court denied. Horiike filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

"'A nonsuit in a jury case or a directed verdict may be granted only when disregarding conflicting evidence, giving to the plaintiffs' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in their favor. [Citations.]' [Citation.]" (*Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 669.)

"In reviewing a grant of nonsuit, the appellate court evaluates the evidence in the light most favorable to the plaintiff. [Citation.] The judgment of nonsuit will be affirmed if a judgment for the defendant is required as a matter of law, after resolving all presumptions, inferences and doubts in favor of the plaintiff. [Citation.] The review of a grant of nonsuit is de novo. [Citation.]" (*Hernandez v. Amcord, Inc., supra,* 215 Cal.App.4th at p. 669.) "'The existence and scope of duty are legal questions for the court.' [Citations.]" (*Coldwell Banker Residential Brokerage Co. v. Superior Court* (2004) 117 Cal.App.4th 158, 163.)

However, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be

of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

## Duty of a Salesperson Acting for a Dual Agent

Horiike contends that Cortazzo, as an associate licensee of CB, owed a fiduciary duty to him equivalent to the fiduciary duty owed by CB. We agree.

The duties of brokers and salespersons in real property transactions are regulated by a comprehensive statutory scheme. (Civ. Code, § 2079 et seq.) Under this scheme, an "agent" is a licensed real estate broker "under whose license a listing is executed or an offer to purchase is obtained." (*Id.*, § 2079.13, subd. (a).) An "associate licensee" is a licensed real estate broker or salesperson "who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee." (*Id.*, subd. (b).) "'Dual agent' means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction." (*Id.*, subd.(d).)

"The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions." (Civ. Code, § 2079.13, subd. (b).)

"[A] broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty. [Citations.]" (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25.) "[A] dual agent has fiduciary duties to both the buyer and seller." (*Assilzadeh v. California Federal Bank* (2000) 82 Cal.App.4th 399, 414.)

CB acted as the dual agent of the buyer and the seller in this case, as was confirmed on the disclosure forms provided to Horiike. The disclosure form explicitly

7

stated that a dual agent has a fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with either the seller or the buyer. (See *Assilzadeh v. California Federal Bank*, *supra*, 82 Cal.App.4th at p. 414.) Cortazzo executed the forms on behalf of CB as an associate licensee. Under Civil Code section 2079.13, subdivision (b), the duty that Cortazzo owed to any principal, or to any buyer who was not a principal, was equivalent to the duty owed to that party by CB. CB owed a fiduciary duty to Horiike, and therefore, Cortazzo owed a fiduciary duty to Horiike.

Miller & Starr explains: "When there is one broker, and there are different salespersons licensed under the same broker, each salesperson is an employee of the broker and their actions are the actions of the employing broker. . . . [¶] When one salesperson obtains the listing and represents the seller, and another salesperson employed by the same broker represents the buyer, they both act as employees of the same broker. That broker thereby becomes a dual agent representing both parties." (2 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 3:12, p. 68, fns. omitted.) Miller & Starr notes: "Salespersons commonly believe that there is no dual representation if one salesperson 'represents' one party to the transaction and another salesperson employed by the same broker 'represents' another party to the transaction. The real estate industry has sought to establish salespersons as 'independent contractors' for tax purposes (see § 3:18), and this concept has enhanced the misunderstanding of salespersons that they can deal independently in the transaction even though they are negotiating with a different salesperson employed by the same broker who is representing the other party to the transaction." (*Id.* at pp. 68-69.)

Cortazzo, as an associate licensee acting on behalf of CB, had the same fiduciary duty to Horiike as CB. The motion for nonsuit should have been denied and the cause of action against Cortazzo for breach of fiduciary duty submitted to the jury. The jury was also incorrectly instructed that CB could not be held liable for breach of fiduciary duty based on Cortazzo's actions.

Cortazzo and CB contend that Horiike cannot show prejudice as a result of the erroneous rulings, because the jury's findings on other claims resolve the claim for

8

breach of fiduciary duty in favor of the defense. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 107 [a plaintiff cannot show prejudice based on the elimination of a proper legal theory if the jury's verdict on a different theory negates an element of the omitted theory].) This is incorrect. The jury's findings that Cortazzo did not provide false information to Horiike, or provided false information that he reasonably believed to be true, and did not intentionally conceal information, does not satisfy his duty to Horiike as a fiduciary.

"'[A] broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty. [Citations.] 'The broker as a fiduciary has a duty to learn the material facts that may affect the principal's decision. He is hired for his professional knowledge and skill; he is expected to perform the necessary research and investigation in order to know those important matters that will affect the principal's decision, and he has a duty to counsel and advise the principal regarding the propriety and ramifications of the decision. The agent's duty to disclose material information to the principal includes the duty to disclose reasonably obtainable material information.'" (*Assilzadeh v. California Federal Bank*, *supra*, 82 Cal.App.4th at pp. 414-415, quoting *Field v. Century 21 Klowden-Forness Realty*, *supra*, 63 Cal.App.4th at pp. 25-26.)

"A fiduciary must tell its principal of all information it possesses that is material to the principal's interests. [Citations.] A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent. [Citation.]" (*Michel v. Palos Verdes Network Group, Inc.* (2007) 156 Cal.App.4th 756, 762.)

"'Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship.' [Citation.] [¶] . . . Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud even

9

though there is no fraudulent intent.'  [Citation.]"  (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562.)

In this case, the jury's findings do not resolve whether Cortazzo breached his fiduciary duty to Horiike.  A trier of fact could conclude that Cortazzo was aware of material information that he failed to provide Horiike, even though he did not have a fraudulent intent.  Cortazzo knew the square footage of the property had been measured and reflected differently in different documents.  When a potential purchaser sought to confirm the square footage, Cortazzo gave handwritten advice to have the square footage verified by a specialist.  He subsequently changed the listing for the property to reflect that the square footage required explanation.  He did not explain to Horiike that contradictory square footage measurements existed.  A trier of fact could conclude that although Cortazzo did not intentionally conceal the information, Cortazzo breached his fiduciary duty by failing to communicate all of the material information he knew about the square footage.  He did not even provide the handwritten advice given to other potential purchasers to hire a specialist to verify the square footage.

The jury's verdict did not necessarily decide the cause of action for breach of fiduciary duty based on Cortazzo's actions.  The jury's findings are inconsistent on the threshold issue of whether Cortazzo made a false representation about the square footage of the living areas.  Therefore, we must reverse the judgment and remand for a new trial.

## DISPOSITION

The judgment is reversed.  Appellant Hiroshi Horiike is awarded his costs on appeal.


KRIEGLER, J.


We concur:



TURNER, P. J.



MOSK, J.

11